JOHN HAGAN, PLAINTIFF IN ERROR V. CHARLES F. LUCAS.

A judgment was obtained in a state court of Alabama, against B. and M., and the sheriff, under an execution issued upon the judgment, levied on certain slaves, as the property of the defendants. They were claimed by L. and were delivered to him, he having given a bond to the sheriff to try the title, and for the forthcoming of the slaves, according to the law of that state. H. had obtained a judgment against B. and M. in the district court of the United States for the district of Alabama, acting as a circuit court: under an execution issued on this judgment, the marshal levied on the slaves, and they were claimed by L. The marshal returned that they were so claimed, upon which an issue was formed in the district court to try the title of L. to the slaves. L. gave in evidence the record of the judgment in the state court against B. and M. and the proceedings under it. Certificates of the records were given on the 4th of December 1834, and they showed that the suit, respecting the right of property in the slaves, had been continued at March term 1834; but did not show whether any further proceeding in the case had taken place at the preceding spring term of the state court. The district court instructed the jury, that the records of the state court were legal evidence, by which they might infer the proceedings were still depending and undetermined in the state court. Held, that the instruction was correct.

Had the property remained in the possession of the sheriff, under the first levy, it is clear the marshal could not have taken it in execution, for the property could not be subject to two jurisdictions at the same time. The first levy, whether it were made under the federal or state authority, withdraws the property from the reach of the process of the other.

Under the state jurisdiction, a sheriff having execution in his hands may levy on the same goods; and where there is no priority on the sale of the goods, the proceeds should be applied in proportion to the sums named in the executions. And where a sheriff has made a levy, and afterwards receives executions against the same nefendant, he may appropriate any surplus that shall remain, after satisfying the first levy, by the order of the court.

But the same rule does not govern where the executions, as in the present case, issue from different jurisdictions. The marshal may apply moneys, collected under several executions, the same as the sheriff. But this cannot be done as between the marshal and the sheriff.

A most injurious conflict of jurisdiction would be likely often to arise between the federal and the state courts, if the final process of the one could be levied on property which had been taken by the process of the other. The marshal or the sheriff, as the case may be, by a levy, acquires a special property in the goods, and may maintain an action for them. But if the same goods may be taken in execution at the same time by the marshal and the sheriff; does this special property vest in the one or the other, or both of them? No such case can exist: property once levied on, remains in the custody of the law, and it is not liable to be taken by another execution, in the hands of a different officer; and especially by an officer acting under a different jurisdiction.

[Hagan v. Lucas.]

On the giving of the bond, the property is placed in the possession of the claimant. His custody is substituted for the custody of the sheriff. The property is not withdrawn from the custody of law. In the bonds of the claimant, under the bond for its delivery to the sheriff, the property is as free from the reach other processes, as it would have been in the hands of the sheriff.

IN error to the district court of the United States for the southern district of Alabama.

Mr Justice M'LEAN delivered the opinion of the Court.

This writ of error is prosecuted by the plaintiffs to reverse a judgment of the district court, vested with the powers of a circuit court, for the southern district of Alabama.

The record in the district court states, that on the 14th of December 1833, a judgment was entered in that court, in favour of John Hagan, against William D. Bynum and Alexander M'Dade, for the sum of 2972 dollars and 58 cents, besides costs ; and that an execution was issued against the goods and chattels, lands and tenements of the defendants, which, on the 19th of February 1834, was levied on several slaves that were claimed by Charles F. Lucas, who gave bond to try the right of property. At the time of the levy, the slaves were in the possession of the claimant.

And the question as to the right of property being brought before the court, under a statute of the state ; the claimant, Lucas, as stated in the bill of exceptions, gave in evidence three records, certified by the clerk of the circuit court of Montgomery county, Alabama, of three judgments rendered in that court, at September term, for various amounts, against the above defendants, Bynum and M'Dade : and upon which judgments, it was proved, executions had regularly issued to the sheriff of Montgomery county, which, on the 10th of October 1833, were levied on the same slaves taken in execution by the marshal, as above stated ; and that the claimant filed his affidavit, on the 25th of November 1833, in the mode prescribed by the statute ; setting forth that the slaves were not the property of the defendants in the execution, but were his property, and gave bond and security to the sheriff, as required by the statute, for the forthcoming of said property, if it should be found subject to said executions ; and for all costs and charges for the delay, &c.

On the giving of this bond, the slaves were delivered to the possession of the claimant ; and these proceedings were returned by the sheriff to the circuit court of Montgomery county. And the records

showed, that at the March and November terms in 1834, the pro-
ceedings for the trial of the right of property were continued.    The
record was certified on the 4th of December 1834.

Upon this evidence the court instructed the jury, that if they be-
lieved that previously to the levy of the marshal, the slaves had been
levied on by the sheriff of Montgomery county, and that they had
been delivered to Lucas, on his making oath and giving bond, as re-
quired by the statute ; and if they believed that the proceedings on
said claim were still pending and undetermined in the circuit court :
that the property was, in the opinion of the court, considered as in
the custody of the law, and consequently not subject to be levied on
by the marshal.

And the counsel for the defendant objected to the records from the
circuit court of Montgomery, as showing the pendency of the suit in
that court, respecting the right of property ; as a term of the court
had intervened, between the certification of the record and the time
of using it in evidence.    But the court overruled the objection, say-
ing, the pendency of the suit was a matter of fact for the jury to de-
termine ; and that they might infer from the proof before them, that
the suit was still pending ; which presumption might be rebutted by
the plaintiff in the execution, &c.

The statute of Alabama, under which this proceeding took place,
was passed on the 24th of December 1812 ; and provides, that where
any sheriff shall levy execution on property, claimed by any person
not a party to such execution, such person may make oath to such
property ; on which the sale shall be postponed by the sheriff, until
the next term of the court: and the court is required to make up an
issue to try the right of property, &c., and the claimant is required
to give bond, conditioned to pay the plaintiff all damages which the
jury, on the trial of the right of property, may assess against him, &c. :
and it is made the duty of the sheriff to return the property levied
upon to the person out of whose possession it was taken, upon such
person entering into bond, with security, to the plaintiff in execution,
in double the amount of the debt and costs, conditioned for the de-
livery of the property to the sheriff, whenever the claim of the pro-
perty so taken shall be determined by the court : and on failure to
deliver the property, the bond, on being returned into the clerk's
office, is to have the effect of a judgment.

The principal question in this case is, whether the slaves referred

[Hagan v. Lucas.]

to were liable to be taken in execution, by the marshal, under the circumstances of the case.

Had the property remained in the possession of the sheriff, under the first levy, it is clear the marshal could not have taken it in execution; for the property could not be subject to two jurisdictions at the same time. The first levy, whether it were made under the federal or state authority, withdraws the property from the reach of the process of the other.

Under the state jurisdiction, a sheriff having execution in his hands, may levy on the same goods; and where there is no priority on the the sale of the goods, the proceeds should be applied in proportion to the sums named in the executions. And where a sheriff has made a levy, and afterwards receives executions against the same defendant, he may appropriate any surplus that shall remain, after satisfying the first levy, by the order of the court.

But the same rule does not govern where the executions, as in the present case, issue from different jurisdictions. The marshal may apply moneys, collected under several executions, the same as the sheriff. But this cannot be done as between the marshal and the sheriff.

A most injurious conflict of jurisdiction would be likely, often, to arise between the federal and the state courts; if the final process of the one could be levied on property which had been taken by the process of the other.

The marshal or the sheriff, as the case may be, by a levy, acquires a special property in the goods, and may maintain an action for them. But if the same goods may be taken in execution, at the same time by the marshal and the sheriff, does this special property vest in the one, or the other, or both of them?

No such case can exist: property once levied on, remains in the custody of the law, and it is not liable to be taken by another execution, in the hands of a different officer; and especially by an officer acting under a different jurisdiction.

But it is insisted in this case, that the bond is substituted for the property; and consequently that the property is released from the levy.

The law provides that the property shall be delivered into the possession of the claimant, on his giving bond and security in double the amount of the debt and costs, that he will return it to the sheriff. if it shall be found subject to the execution.

Is there no lien on property thus situated, either under the execution or the bond ?

That this bond is not in the nature of a bond given to prosecute a writ of error, or on an appeal, is clear. The condition is, that the pro-. perty shall be returned to the sheriff, if the right shall be adjudged against the claimant. Now it would seem that this-bond cannot be considered as a substitute for the property, as the condition requires its return to the sheriff. The object of the legislature in requiring this bond, was to insure the safe keeping and faithful return of the property; to the sheriff, should its return be required. If, then, the property is required by the statute and the condition of the bond to be delivered to the sheriff on the contingency stated, can it be liable to be taken and sold on execution.

If the property be liable to execution, a levy must always produce a forfeiture of the condition of the bond. For a levy takes the property out of the possession of the claimant, and renders the performance of his bond impossible. Can a result so repugnant to equity and propriety as this, be sanctioned? Is the law so inconsistent as to authorize the means by which the discharge of a legal obligation is defeated, and at the same time exact a penalty for the failure. This would indeed be a reproach to the law and to justice. The maxim of the law is, that it injures no man, and can never produce injustice.

On the giving of the bond, the property is placed in the possession of the claimant. His custody is substituted for the custody of the sheriff. The property is not withdrawn from the custody of the law. In the hands of the claimant, under the bond for its delivery to the sheriff; the property is as free from the reach of other processes, as it would have been in the hands of the sheriff.

In Holt 643, and 1 Show. 174, it was resolved by Holt, chief justice, that goods being once seized and in custody of the law, they could not be seized again by the same or any other sheriff; nor can the sheriff take goods which have been distrained, pawned or gaged for debt; 4 Bac. Ab. 389; nor goods before seized on execution, unless the first execution was fraudulent, or the goods were not legally seized under it.

In Woodfall's Tenant's Law, 389, it is said: By the seizure under the execution, the goods were in the custody of the law, and were not, therefore, distrainable ; for it is repugnant, ex vi termini, that it should be lawful to take the goods out of the custody of the law :

and that cannot be a pledge which cannot be reduced into actual possession.

In 3 Mun. 417, the court decided that the lien, by virtue of a writ of fieri facias, upon the property of the debtor, is not released by his giving a forthcoming bond, but continues until such bond is forfeited.

In that case, the defendant's property having been levied on by an execution in the hands of the sheriff, was suffered to remain in his possession, on his giving a forthcoming bond for the delivery of the goods on the day of sale: but before the day of sale the defendant delivered the goods in satisfaction of another execution, and the question was made whether the forthcoming bond released the lien of the first execution.

In his opinion, Judge Roane draws the following distinctions between a forthcoming bond, and what is called a replevy bond, under the statute of Virginia. 1. A replevy bond under the act operated a release of the property. 2. Because the surety therein is to be approved by the creditor: a circumstance very material in a bond considered as a substitute for an execution, and wanting as to the sureties upon forthcoming bonds. 3. Because a replevy bond obtained the force of a judgment by the mere giving thereof; though its execution was suspended till the expiration of the three months, and did not owe its obligation, as a judgment, to the breach of the condition thereof, as is the case of forthcoming bonds.

The bond given by the claimant Lucas, bears a strong analogy to a forthcoming bond. By the latter, the goods were to be delivered to the sheriff on the day of sale: by the former, the goods were to be delivered to the sheriff, so soon as the right shall be determined against the claimant. In neither bond is the plaintiff in the execution consulted, as is done in a replevy bond, as to the sufficiency of the surety: nor do either of these bonds, like the replevy bond, operate as a judgment, until a breach of the condition. In fact, the bond under the Alabama statute is substantially a forthcoming bond.

In a late case, the supreme court of Alabama decided the same question which is made on this bond; on a bond given for the delivery of property under the attachment laws of that state. They decided that the giving of the bond did not release the goods from the lien of the attachment. A contrary decision had been given by the court in a case similar; but on further examination and more mature reflection, two of the three judges made the above decision. This adjudication being made on the construction of a statutory proceed-

[Hagan v. Lucas.]

ing, and by the supreme court of the state, forms a rule for the decision of this court.

We think, that part of the charge to the jury by the district court which respected the pendency of the suit in the state court, and which was excepted to, was substantially correct: and we are of opinion, that on principle and authority, and also under the construction given to the statute by the supreme court of the state; the judgment of the district court must be affirmed.

This cause came on to be heard on the transcript of the record from the district court of the United States for the southern district of Alabama, and was argued by counsel; on consideration whereof, it is adjudged and ordered by this court, that the judgment of the said district court in this cause be, and the same is hereby affirmed, with costs.