UNITED STATES of America,
Plaintiff-Appellee,

v.

$79,123.49 IN UNITED STATES CASH AND CURRENCY, Defendant.

Appeal of Claimants Jan E. OSTERMEI-ER, Stotler & Company, Terrell D. Brown.

No. 86–2173.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 9, 1986.

Decided Sept. 22, 1987.

As Amended Sept. 28, 1987.

---

Morris D. Berman, Giesen & Berman, S.C., Madison, Wis., for defendant.

Richard D. Humphrey, Asst. U.S. Atty., Madison, Wis., for plaintiff-appellee.

Before CUDAHY and RIPPLE, Circuit Judges, and WILL, Senior District Judge.*

WILL, Senior District Judge.

Wisconsin officials brought a forfeiture action against currency taken from the claimants in the course of a drug deal. In dismissing the action, the Wisconsin court ordered the state to deposit the money with the clerk of courts for later delivery to the claimants. After the currency was deposited with the court, a deputy United States marshal came to the state courthouse and seized the currency to make it the subject of a federal forfeiture action. The question presented is whether a federal court may take jurisdiction over property seized by a federal agent prior to the termination of a state court proceeding involving the same *res.* We hold that it may not.

I.

On June 15, 1984, claimants Jan Ostermeier and Terrell Brown, along with another individual, arranged to meet an undercover agent of the Wisconsin Department of Justice at a motel parking lot in Madison, Wisconsin. The purpose of the meeting was for the agent to sell, and the claimants to buy, 280 pounds of marijuana. After examining the marijuana, the claimants agreed on a price of $75,000. Law enforcement agents then arrested them and seized $79,123.49 in cash from their possession.

On July 10, 1984, the state of Wisconsin filed a civil complaint in Dane County Circuit Court seeking forfeiture of the cash pursuant to Wis.Stat. §§ 161.55, 161.555. Ostermeier, Brown, and Stotler & Company (a creditor of Brown) became claimants in the action. On November 5, 1985, Judge Mark A. Frankel dismissed the case due to the state's failure to comply with a time limitation imposed by Wisconsin law. Three weeks later, the court denied the state's motion for reconsideration. On December 16, 1985, Judge Frankel ordered the state immediately to deposit the money with the clerk of courts for Dane County. In a separate order issued the same day, he directed the clerk of courts to turn the money over to counsel for one of the claim-

---

* The Honorable Hubert L. Will, Senior District Judge for the Northern District of Illinois, is *sitting by designation.*

ants.[1] That order was stayed for a period of ten days.

On December 17, 1985, the day after the state court entered these orders, the United States filed an action against the same $79,123.49 in federal district court. The action was filed under the forfeiture section of the Controlled Substances Act, 21 U.S.C. § 881, which provides that "All moneys ... furnished or intended to be furnished by any person in exchange for a controlled substance" are subject to forfeiture. 21 U.S.C. § 881(a)(6). A seizure warrant was issued the same day, and a deputy United States marshal proceeded to the Dane County courthouse where the money was located. The marshal took possession of the money and placed it in an asset seizure fund account, where it remains at this time.

For a short time, the cases proceeded on parallel tracks in federal and state court. In the district court, the claimants filed motions to dismiss on the ground that the state court had previously taken jurisdiction over the *res*. On March 3, 1986, Judge Shabaz denied the motions but indicated that he would reconsider if the state's continuing jurisdiction could be established. Meanwhile, the claimants had filed a motion in state court to hold the Assistant Attorney General and clerk of courts in contempt for failing to deliver the money in accordance with the state court's order. On May 6, 1986, the state court entered a finding that its order of December 16, 1985 had not been carried out and that it maintained jurisdiction for further proceedings. One week later, acting "in furtherance of [its] order of December 16, 1985," the state court directed the Sheriff for Dane County "to proceed to the U.S. Marshal's Service of the United States District Court in Madison, Wisconsin and to seek return of $79,123.49 seized by federal warrant from the Dane County Clerk on December 17, 1985 unless the U.S. District Court determines

that the Federal Court has a superior claim to said funds." In light of this order, the state court ruled the motion for contempt moot.

The following day, May 14, 1986, the district court held a hearing on the claimants' motion to reconsider. On June 2, 1986, Judge Shabaz, finding that he had jurisdiction, denied the motion. When the United States obtained possession of the money, he found, the federal courts acquired exclusive jurisdiction over it. The state court's continuing jurisdiction, therefore, must be solely *in personam*, he reasoned. Subsequently, Judge Shabaz granted summary judgment for the United States in the amount of $77,532.00 and the parties stipulated as to the disposition of the remaining $1,591.49. The court also granted the claimants' motion for a stay pending appeal.[2]

## II.

Since the earliest days of the Republic the rule has been established that, when state and federal courts each proceed against the same *res*, "the court first assuming jurisdiction over the property may maintain and exercise that jurisdiction to the exclusion of the other." *Penn General Casualty Co. v. Pennsylvania*, 294 U.S. 189, 195, 55 S.Ct. 386, 389, 79 L.Ed. 850 (1935). The purpose of the rule is "[t]o avoid unseemly and disastrous conflicts in the administration of our dual judicial system, and to protect the judicial processes of the court first assuming jurisdiction." *Id.* (citations omitted). An 1836 case, *Hagan v. Lucas*, 35 U.S. (10 Pet.) 400, 9 L.Ed. 470, is illustrative. There the Court held that a United States marshal acting under execution from a federal court could not validly take possession of property that was the subject of a pending state court proceeding. The Court observed:

> A most injurious conflict of jurisdiction would be likely, often, to arise between

---

1. The claimants had entered a stipulation providing that the money should be turned over to David Mandell, counsel for Stotler & Co.

2. In the meantime, the United States initiated a federal criminal prosecution against claimants

Ostermeier and Brown. On October 3, 1986, this court affirmed their convictions for conspiracy to purchase marijuana with intent to distribute. *United States v. Kaufmann*, 803 F.2d 289 (7th Cir.1986).

the federal and the state courts, if the final process of the one could be levied on property which had been taken by the process of the other.... [P]roperty, once levied on, remains in the custody of the law, and it is not liable to be taken by another execution, in the hands of a different officer, and especially by an officer acting under a different jurisdiction. *Id.* 35 U.S. at 403. Though the nature of the "property" involved in *Hagan* —human slaves—casts something of a pall over the rule's origins, its subsequent invocation in cases involving ships, *Taylor v. Carryl,* 61 U.S. (20 How.) 583, 15 L.Ed. 1028 (1857), railroad cars, *Freeman v. Howe,* 65 U.S. (24 How.) 450, 16 L.Ed. 749 (1860), personalty, *Covell v. Heyman,* 111 U.S. 176, 4 S.Ct. 335, 28 L.Ed. 390 (1884), trust funds, *United States v. Bank of New York & Trust Co.,* 296 U.S. 463, 56 S.Ct. 343, 80 L.Ed. 331 (1936), and other forms of property we continue to recognize as such confirms the rule's modern-day vitality.

In the century following *Hagan,* the Court had several occasions to spell out the parameters of the rule of prior exclusive jurisdiction. In cases of concurrent *in personam* jurisdiction, the Court held, the rule has no place; subject to principles of *res judicata* (and later-developed doctrines of federal abstention), a state and federal court may proceed simultaneously. *Kline v. Burke Construction Co.,* 260 U.S. 226, 230, 43 S.Ct. 79, 81, 67 L.Ed. 226 (1922); *see Colorado River Water Conservation District v. United States,* 424 U.S. 800, 817–19, 96 S.Ct. 1236, 1246–47, 47 L.Ed.2d 483 (1976). *Quasi in rem* as well as *in rem* actions are subject to the rule, however, for in each "the court or its officer [must] have possession or control of the property which is the subject of the suit in order to proceed with the cause and to grant the relief sought." *Penn General,* 294 U.S. at 195, 55 S.Ct. at 389; *see Blackhawk Heating & Plumbing Co. v. Geeslin,*

530 F.2d 154 (7th Cir.1976). The logical and practical difficulty of two courts simultaneously vying for possession or control of the same property is the key; thus, if only one of the actions is *in rem* or *quasi in rem,* both cases may proceed side by side. *See United States v. Klein,* 303 U.S. 276, 58 S.Ct. 536, 82 L.Ed. 840 (1938); *Barrett v. International Underwriters, Inc.,* 346 F.2d 345 (7th Cir.1965).[3]

■ Turning to this case, the application of these principles is straightforward. Both proceedings are *in rem:* the statute under which the Wisconsin case was brought specifically provides that a forfeiture "is an action in rem," Wis.Stat. § 161.555, and federal courts have consistently interpreted 21 U.S.C. § 881 to like effect. *E.g., United States v. One 1976 Mercedes Benz 280S,* 618 F.2d 453 (7th Cir.1980); *United States v. $57,480.05 United States Currency,* 722 F.2d 1457 (9th Cir.1984); *see also Calero-Toldeo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 679, 686 n. 25, 94 S.Ct. 2080, 2089, 2093 n. 25, 40 L.Ed.2d 452 (1974) (Puerto Rican statute "modeled after" § 881 confers *in rem* jurisdiction). It is undisputed that the Wisconsin court's assertion of jurisdiction over the property predated the district court's; likewise, no one doubts that the marshal's seizure of the *res* made execution of the state court's pending orders impossible. From all that appears in the record, moreover, Judge Frankel never knew of the potential United States claim until after the seizure was effected. It is not surprising that he took umbrage at the federal intrusion—as his tersely worded orders of May 1986 indicated he did.

In sum, this case presents all of the logistical problems and potential for federal-state conflict inherent in two courts simultaneously competing for control of one *res.* Nevertheless, the government

---

**3.** To safeguard the integrity of its orders, the first court to assume jurisdiction over the *res* may even enjoin proceedings in the second, *Princess Lida of Thurn and Taxis v. Thompson,* 305 U.S. 456, 59 S.Ct. 275, 83 L.Ed. 285 (1939) —a notable departure from the general principle that neither a state nor federal court may

issue an injunction against the other. *See Donovan v. City of Dallas,* 377 U.S. 408, 84 S.Ct. 1579, 12 L.Ed.2d 409 (1964) (precluding state injunctions of federal proceedings, but recognizing *res* exception); 28 U.S.C. § 2283 (precluding federal injunctions of state proceedings, with exceptions).

raises several theories under which it believes we can uphold the jurisdiction, and therefore the judgment, of the district court. We consider each of these theories in turn.

The United States argues, first, that the district court had jurisdiction by virtue of the federal government's possession of the property. This argument goes much too far. Possession obtained through an invalid seizure neither strips the first court of jurisdiction nor vests it in the second. *Taylor v. Carryl*, 61 U.S. at 599–600. To hold otherwise would substitute a rule of force for the principle of mutual respect embodied in the prior exclusive jurisdiction doctrine. The government's reliance on *Michigan State Police v. 33d District Court*, 138 Mich.App. 390, 360 N.W.2d 196 (1984), is therefore misplaced. In that case, the state proceeding was criminal, not *in rem*, and the federal government properly came into possession of the money for which it sought forfeiture. *See id.* 360 N.W.2d at 198.

The district court adopted a slightly more refined version of the government's position, holding that the federal seizure converted the state court's jurisdiction from *in rem* to *in personam*. The court cited no authority for its conclusion, nor have we discovered any. On the contrary, the Wisconsin statute under which the action was brought specifically states, without limitation, that forfeiture proceedings are *in rem*. In any event, since the seizure in no way lessened the state court's need for control over the property in order to effectuate its orders, we must treat the state court's jurisdiction—for purposes of the rule of prior exclusive jurisdiction—as *in rem*.

■ The government next contends that the state court's jurisdiction terminated on December 26, 1985, when the court's stay expired without the state of Wisconsin having filed an appeal. Apparently, the United States believes that Wisconsin circuit courts lose their jurisdiction once a stay pending appeal expires, even though the underlying order has not been executed. Judge Frankel evidently did not share this view, since he continued to enter orders concerning the property as late as May 13, 1986. Moreover, when one considers that the government's theory would leave the circuit courts powerless to enforce final orders that are not appealed, its absurdity becomes manifest. Even accepting it as correct, however, the federal seizure would still be invalid. It took place on December 17, 1985, only one day after the state court ordered the return of the money. At that time, the clerk of courts had possession of the money and Judge Frankel's stay order remained in effect. Under even the most restrictive view of the circuit court's powers, therefore, it maintained jurisdiction over the property at the time of the seizure.

Finally, the government relies on the unique properties of 21 U.S.C. § 881 as establishing district court jurisdiction in this case. The government notes that exclusive jurisdiction of actions under § 881 belongs in the federal courts. *See* 28 U.S.C. § 1355. This hardly establishes that the state court lacked jurisdiction, however, since that court was proceeding under a valid Wisconsin forfeiture statute. The United States does not argue that § 881 preempts state forfeiture actions, nor could it, given Congress' clear contrary intent. *See* 21 U.S.C. § 903 (anti-preemption provision of Controlled Substances Act). The only possible significance of the district court's exclusive jurisdiction is that the United States might not have been able to receive a final judgment of forfeiture in the state court. That fact, however, would not preclude federal authorities from applying to Judge Frankel for an orderly turnover that would permit them to protect the federal government's interests. Surely, it did not justify them in seizing the money without so much as informing the state court of the federal claim.

Nor is ignorance of the Wisconsin forfeiture law an excuse. That law, patterned after the Uniform Controlled Substances Act, 9 U.L.A. 187, provides specific protections for claimants in the position of the United States:

Any person claiming the right to possession of property seized may apply for its return to the circuit court for the county in which the property was seized. The court shall order such notice as it deems adequate to be given the district attorney and all persons who have or may have an interest in the property and shall hold a hearing to hear all claims to its true ownership.

Wis.Stat. § 161.55(3). It further states:

If the right to possession is proved to the court's satisfaction, it shall order the property returned if:

(a) The property is not needed as evidence or, if needed, satisfactory arrangements can be made for its return for subsequent use as evidence;

(b) All proceedings in which it might be required have been completed.

*Id.* Given these provisions, the United States is in no position to claim that its interests, civil and criminal, could not be preserved by a Wisconsin court. Under Wisconsin law, federal authorities could have applied to the court for an order directing that the money be turned over directly to them or in their presence. Had they done so, of course, it would still have been up to the state court to decide whether to grant the relief sought; if the court had denied relief, the federal government might have had difficulty acquiring the money. Section 881, however, does not enact a general rule of necessity authorizing the federal executive branch to override state law whenever it deems federal interests insecure. In the absence of any statutory language supporting the government's interpretation, we must assume that Congress envisioned a more respectful procedure.

The government also finds significance in that, under § 881, "the government's interest arises at the time the object is used or generated in violation of the statute, and not at the time of the seizure or at the time of a judgment in the civil forfeiture proceeding." *United States v. $84,000 United States Currency*, 717 F.2d 1090, 1102 (7th Cir.1983), *cert. denied*, 469 U.S. 836, 105 S.Ct. 131, 83 L.Ed.2d 71 (1984). This argument confuses the jurisdictional question with the merits. Though the government's interest in the money may well have arisen at the time of the drug deal, nothing in § 881 purports to supersede the rule of prior exclusive jurisdiction. We therefore conclude that the district court lacked jurisdiction to adjudicate the forfeiture proceeding below.

### III.

The judgment of the district court is vacated and the case remanded to be dismissed for lack of jurisdiction over the *res*. In dismissing, the district court should order the money returned to the clerk of courts for Dane County from whom it was seized. Nothing in this opinion precludes federal authorities from applying to the state court for an order that the funds be turned over to them or in their presence nor from reinstituting federal forfeiture proceedings once the state action involving the same *res* has terminated.

VACATED AND REMANDED, WITH DIRECTIONS.