COMMONWEALTH vs. ONE 1987 FORD ECONOLINE VAN.

Hampden. April 6, 1992. - August 14, 1992.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & O'CONNOR, JJ.

*Contempt. Practice, Civil*, Contempt proceeding, New trial. *Damages,* Contempt. *Forfeiture Proceeding.*

In a forfeiture proceeding culminating in a finding of contempt being entered against the Commonwealth for failing to comply with a judge's orders compelling the return of a motor vehicle seized in conjunction with a drug enforcement effort, there was sufficient evidence to warrant the judge's findings that the Commonwealth had clearly and undoubtedly disobeyed the judge's clear and unequivocal orders, and that the Commonwealth had failed to meet its burden of proving that compliance was impossible. [411-413]

In a forfeiture proceeding culminating in a finding of contempt being entered against the Commonwealth for failing to comply with a judge's orders compelling the return of a motor vehicle seized in conjunction with a drug enforcement effort, the judge properly issued an order requiring the Commonwealth to return the vehicle or to compensate its owner for the vehicle's value, to pay the owner's attorney's fees, and to pay certain fines in the event the Commonwealth failed to comply with the order in a timely fashion. [413-415]

In a forfeiture proceeding culminating in a finding of contempt being entered against the Commonwealth for failing to comply with a judge's orders compelling the return of a motor vehicle seized in conjunction with a drug enforcement effort, the judge properly exercised his discretion in ruling that the alleged ineffectiveness of the assistant district attorney at trial, and the lack of communication between the attorneys who argued the case for the Commonwealth, did not provide a sufficient basis on which the Commonwealth could argue that it is entitled to a new trial. [415]

CIVIL ACTION commenced in the Superior Court Department on June 16, 1988.

A complaint for contempt filed on April 10, 1990, was heard by *William H. Welch*, J., and a motion for rehearing was heard by him.

The Supreme Judicial Court granted a request for direct appellate review.

*Laurel H. Brandt*, Assistant District Attorney, for the Commonwealth.

*Patricia A. Bobba* for Sonia Ivette Viruet.

LIACOS, C.J. On April 10, 1990, Sonia Ivette Viruet filed a complaint for civil contempt after the Commonwealth failed to obey two court orders compelling the return of Viruet's 1987 Ford Econoline van.[1] The Commonwealth had seized the van in conjunction with a drug enforcement effort. After a two-day bench trial, a judge in the Superior Court found the Commonwealth in contempt and issued an order requiring the Commonwealth to return the van or to compensate Viruet for its value. The order also required the Commonwealth to pay Viruet's attorney's fees and to pay certain fines in the event the Commonwealth failed to comply with the order in a timely fashion. Subsequently, the Commonwealth filed a motion for a new trial. This motion was denied after a hearing. The Commonwealth appealed to the Appeals Court. We granted Viruet's application for direct appellate review.

On appeal, the Commonwealth argues that the judge erred in holding the Commonwealth in contempt because compliance with the court orders to return the van was rendered impossible by virtue of an alleged seizure of the van by Federal authorities. Additionally, the Commonwealth argues that the judge erred in denying its motion for a new trial. Finally, the Commonwealth argues that the contempt order itself was defective because the order required the Commonwealth to pay compensation in excess of Viruet's actual loss. We affirm the judge's contempt finding and order, as well as the denial of the motion for a new trial.

---

[1] The first order to compel return was entered in Hampden Superior Court Civil Action 88-204 on June 17, 1988, according to the docket sheet. See *infra*.

The relevant facts are as follows. In August, 1987, Sonia Viruet purchased a 1987 Ford Econoline van from one Hector Maldonado. On October 27, 1987, Maldonado was arrested on drug charges. Following this arrest, officials from the western Massachusetts narcotics task force (task force), comprised of Federal and State law enforcement authorities, seized Viruet's van on November 24, 1987. They alleged that Maldonado had purchased the van with drug proceeds and had used it to transport a controlled substance. No charges were filed against Viruet.

Viruet's van was taken to a storage facility, shared by Federal and State authorities, in western Massachusetts. On February 3, 1988, the Commonwealth filed a complaint (Civil Action 88-204, see note 1, *supra*) seeking forfeiture of the van. In connection with this proceeding, on April 1, 1988, the Commonwealth sought, and obtained, an interim order from a judge in the Superior Court authorizing the Commonwealth to hold the van pending the outcome of the forfeiture proceeding.

On April 6, 1988, the Commonwealth voluntarily dismissed the forfeiture proceeding, apparently concluding that State law at that time did not authorize the forfeiture of items purchased with drug proceeds. Despite dismissing its forfeiture action, however, the Commonwealth did not return the van to Viruet. This led Viruet to file a motion on June 9, 1988, seeking to compel the Commonwealth to return her van. This motion was scheduled to be heard on June 17, 1988. On June 16, 1988, the Commonwealth commenced the instant proceeding by filing a complaint and affidavit which were nearly identical to those filed by the Commonwealth in the first forfeiture proceeding.[2] The next day, a hearing was held on Viruet's motion, and, on the same day, a judge in the Superior Court allowed the motion and ordered the Commonwealth to return Viruet's van. The Commonwealth did

---

[2]The Commonwealth contends that an error led to the filing of the second complaint. We note, however, that the affidavit accompanying the second complaint was notarized on June 16, 1988, the day the complaint was filed.

not do so. Instead, the Commonwealth sought approval from a different judge in the Superior Court to secure and hold the van. That judge denied the motion on September 1, 1988, and ordered the Commonwealth to return the van. Nevertheless, the Commonwealth failed again to do so.

.On April 10, 1990, the Commonwealth still had not returned the van, and Viruet sought this complaint for civil contempt pursuant to Mass. R. Civ. P. 65.3, as appearing in 386 Mass. 1244 (1982).[3] At the contempt trial, the Commonwealth's principal defense was that it was impossible to return the van because it had been seized by Federal authorities on June 20, 1988. The Commonwealth presented three witnesses to support this defense. One witness, Officer Kenneth Sullivan, a member of the task force that had originally seized the van, testified that the June 17 order to return the van was issued on a Friday, that he learned of the order after 4 P.M. that day, and that, by the time he learned of the order, it was too late in the day to retrieve the van from the storage facility. Sullivan further testified that he did not have access to the van over the weekend and that, before he could retrieve the van the following Monday, June 20, 1988, he was notified that Federal authorities had initiated an administrative seizure of the van. Another witness, Agent Sean McDonough of the United States Drug Enforcement Administration (DEA), testified that, on June 20, 1988, he was notified by Special Agent Robert Howe, an Internal Revenue Service agent assigned to the task force, that Viruet's van had been identified as the proceeds of a drug transaction. McDonough further testified that, based on this information, and based on "information provided by the investigating State Police Agents," he initiated an administrative seizure of the van on that same day pursuant to 21 U.S.C. § 881 (1988). According to McDonough, notice of the seizure was published in the fall, 1988, and, during this time, he spoke

[3]Viruet originally had filed a "motion" for contempt on February 14, 1989, but the judge took no action and instructed Viruet to comply with rule 65.3 by filing a "complaint."

with Viruet's attorney regarding measures she could take before Federal agencies to protect her interest in the van. Finally, Special Agent Norman Houle of the DEA also testified for the Commonwealth. Agent Houle read to the court certain documents which purportedly corroborated Agent McDonough's testimony regarding the procedures that were followed by Federal authorities in connection with their seizure of the van.[4] In addition, Houle testified that a Federal proceeding ultimately led to the van being declared forfeited to the United States government on March 29, 1990. No documentation of this forfeiture was introduced in evidence.

At the conclusion of the testimony, the judge took the case under advisement and afforded the Commonwealth an additional week to submit documentary evidence as to why the Commonwealth had not returned the van. The Commonwealth did not submit any such evidence. On June 1, 1990, the judge found the Commonwealth in contempt. The judge ordered the Commonwealth to return the van within ten days and to pay Viruet $2,000 in attorney's fees. The judge further ordered: "If the van is not returned within ten (10) days the Commonwealth . . . shall pay to [Viruet] $22,500 for the value of the van plus $2,000 as a civil penalty for their contempt of the Court's Order plus $3,000 as attorney's fees to the defendant. If this sum is not paid within thirty (30) days after the expiration of the ten (10) days, the civil penalty shall be increased at the rate of $1,000 for each fifteen (15) days, or fraction thereof, the sum remains unpaid."[5] The order was stayed pending this appeal.[6]

1. *The contempt finding.* "Civil contempt is found where there is clear and undoubted disobedience of a clear and unequivocal command." *Allen* v. *School Comm. of Boston*, 400

---

[4]None of these documents was introduced in evidence.

[5]The order also prohibits the Commonwealth from disbursing any funds from its forfeiture account until the van is returned to Viruet.

[6]The judge agreed to stay the order on the Commonwealth's placing $27,500 in an interest-bearing escrow account.

Mass. 193, 194 (1987). *Manchester* v. *Department of Envtl. Quality Eng'g*, 381 Mass. 208, 212 (1980). Noncompliance with a court order may be excused where compliance becomes impossible, but the burden of proving impossibility lies with the alleged contemnor. See *Allen, supra* at 194-195. See also *Fortin* v. *Commissioner of the Mass. Dep't of Pub. Welfare*, 692 F.2d 790, 796 (1st Cir. 1982), and cases cited. It has been noted that this burden is a difficult one to meet. See *id.*

In the present case, the Commonwealth's evidence of impossibility consisted almost entirely of the testimony of Officer Sullivan, who indicated that he was unable to gain access to the van immediately following the June 17 order and that he discontinued his efforts on June 20, when he learned that Federal authorities had initiated a Federal seizure of the van.[7] The Commonwealth did not present any evidence that it took action thereafter to attempt to comply with the judge's order. Rather, a generous review of the evidence[8] reveals that the Commonwealth simply chose to ignore the order and to accede to the authority of the Federal agents. In these circumstances, where the Commonwealth did not present evidence that it was "reasonably diligent and energetic in attempting to accomplish what was ordered," *Ricci* v. *Okin*, 537 F. Supp. 817, 824 (D. Mass. 1982), quoting *Palmigiano* v. *Garrahy*, 448 F. Supp. 659, 670 (D.R.I. 1978), the judge was warranted in concluding that the Commonwealth did not meet its burden of proving that compliance was impossible.[9]

---

[7] The testimony of Agents Houle and McDonough only pertained to the Commonwealth's argument that the Federal seizure had occurred. The testimony did not indicate that the Commonwealth made any efforts toward compliance with the court order.

[8] In light of the fact that the van was held at a location which was shared by Federal and State authorities, the judge would have been warranted in finding that the Commonwealth's bald assertion that it did not have access to the van over the weekend was not credible.

[9] Indeed, in light of the last minute nature of the Federal seizure, and in light of Agent McDonough's testimony that he initiated the Federal seizure after receiving information from members of the task force, the

Moreover, it cannot be said that, due to the Federal seizure of the van, the circumstances facing the Commonwealth were such that any effort to attempt to comply with the judge's order would have been fruitless. The premise of the Commonwealth's argument to that effect — that the Federal seizure created a legal barrier to compliance with the Superior Court order — is simply incorrect. It is well established that where a State court first exercises jurisdiction over a res (in this case the van), that court may do so to the exclusion of concurrent Federal in rem jurisdiction. *Penn Gen. Casualty Co.* v. *Pennsylvania ex. rel. Schnader*, 294 U.S. 189, 195 (1935), and cases cited. See *United States* v. *$79,123.49 in U.S. Cash & Currency*, 830 F.2d 94, 96-98 (7th Cir. 1987). This rule ensures that the Federal and State sovereigns do not compete simultaneously for possession or control of the same property. See *id.* at 97. Accordingly, at the time of the Federal seizure, the Superior Court order requiring the Commonwealth to return the van remained in full force. Indeed, had the Commonwealth notified the Superior Court of the Federal seizure, the judge would have had the option of enjoining the Federal agents from taking custody of the van, see *Princess Lida of Thurn & Taxis* v. *Thompson*, 305 U.S. 456, 466-468 (1939); *$79,123.49 in U.S. Cash & Currency*, supra at 97 n.3, or modifying his order to allow the Commonwealth to turn the van over to the Federal authorities. In any event, the authority over the van rested with the Superior Court, and not with the Federal drug enforcement agents. For this reason, the Commonwealth's claim of legal impossibility must fail.

2. *The contempt order.* In challenging the judge's contempt order, the Commonwealth essentially argues that the

---

trial judge would have been warranted in finding that the Federal seizure was conducted at the Commonwealth's behest as a means of circumventing the court order to return the van. Such conduct would render the impossibility defense unavailable to the Commonwealth, as "[t]he defense of impossibility is unavailing where an alleged contemnor is responsible for its inability to comply." *Allen* v. *School Comm. of Boston*, 400 Mass. 193, 195 (1987).

Commonwealth should not be required to compensate Viruet for the value of the van because, even if the Commonwealth had complied with the order and had returned the van, the Federal authorities would have seized the van immediately thereafter. Accordingly, the Commonwealth argues that, at most, it should only be required to compensate Viruet for the value of the "momentary possession" of the van that Viruet otherwise would have enjoyed. This argument is without merit.

We cannot speculate that the Federal seizure and subsequent forfeiture would have occurred as they did if the Commonwealth had first returned the van to Viruet. Indeed, the testimony of Agent McDonough suggests otherwise. McDonough testified that he was able to initiate an administrative seizure of the van because the van was on public property at the western Massachusetts storage facility. Had the van been returned to Viruet, a different result may have obtained. In any event, the Commonwealth's arguments regarding what might have been are entirely speculative, and the judge properly exercised his discretion in refusing to engage in such speculation.

The Commonwealth also argues that Viruet's losses were due to her own failure to challenge the Federal seizure and not due to any action on the part of the Commonwealth. This argument is also without merit. Viruet had obtained two court orders requiring the Commonwealth to return her van. It may be that her failure to challenge the Federal forfeiture action was due to her justifiable expectation that the Commonwealth would comply with those orders. Accordingly, we conclude that the judge properly ordered the Commonwealth to compensate Viruet for the value of the van.

As to the other components of the judge's contempt order, the award of attorney's fees was proper. *Allen, supra* at 195 n.1. *Manchester, supra* at 215-216. Similarly, to the extent that the order required the Commonwealth to pay a civil penalty in the event it failed to comply with the contempt order, this aspect of the order was also proper, as it was a coercive penalty designed to achieve compliance with the

judge's order for the benefit of the complainant. *Labor Relations Comm'n* v. *Fall River Educators' Ass'n,* 382 Mass. 465, 475-476 (1981). See *Furtado* v. *Furtado,* 380 Mass. 137, 141 (1980).

3. *Motion for a new trial.* Although the Commonwealth has appealed from the judge's denial of its motion for a new trial, it has not presented any argument to support its claim that the judge's ruling was improper. A judge has "broad authority . . . to grant or to deny a new trial; his determination will be reversed only for a clear abuse of discretion." *Galvin* v. *Welsh Mfg. Co.,* 382 Mass. 340, 343 (1981). We see no such abuse of discretion in the judge's ruling that the alleged ineffectiveness of the assistant district attorney at trial, and the lack of communication between the attorneys who argued the case for the Commonwealth, did not provide a sufficient basis on which the Commonwealth could argue that it is entitled to a new trial. There was no error.

4. *Conclusion.* The contempt finding is affirmed, and the contempt order is affirmed.

*So ordered.*[10]

---

[10]Viruet has requested double costs and attorney's fees for this appeal. See Mass. R. A. P. 25 and 26 (b), as amended, 378 Mass. 925 (1979). We do not consider this appeal to be frivolous as Viruet argues, nor does she point to any authority permitting the imposition of attorney's fees by this court. We do conclude, however, that she is entitled to the costs of this appeal. See *Yorke Management* v. *Castro,* 406 Mass. 17, 19-20 (1989).