**EQUIMED, INC., a Delaware Corporation, and Douglas R. Colkitt, M.D., Plaintiffs,**

**v.**

**Arla GENSTLER, M.D., Defendant.**

**No. 96–4046–RDR.**

United States District Court,
D. Kansas.

April 16, 1996.

Jeffery A. Jordan, Foulston & Siefkin, Wichita, KS, James L. Grimes, Jr., Foulston & Siefkin, Topeka, KS, James P. Kimmel, Jr., Marcy L. Colkitt & Associates, P.C., Wilmington, DE, for plaintiffs.

W. Robert Alderson, Darin M. Conklin, Alderson, Alderson & Montgomery, Topeka, KS, Pedro L. Irigonegaray, Irigonegaray & Associates, Topeka, KS, R. Alan Jones, R.A.J. Limited, Las Vegas, NV, for defendant.

### MEMORANDUM AND ORDER

ROGERS, District Judge.

This matter is presently before the court upon plaintiffs' motion for preliminary injunction [1] and defendant's motions for temporary restraining order.[2] Having conducted hearings on these motions, the court is now prepared to rule.

This case was filed on March 19, 1996. In the original complaint, plaintiffs EquiMed, Inc. and Dr. Douglas R. Colkitt sought de-

---

1. Plaintiff filed a motion for "partial summary judgment and permanent injunction, or in the alternative for replevin and preliminary injunction." Plaintiff recognizes that its request for partial summary judgment and permanent injunction is premature. The court shall consider these matters when they are ripe.

2. Defendant filed a motion for temporary restraining order on April 8, 1996. The court held a hearing on that motion on April 11, 1996 and took the matter under advisement. Defendant filed another motion for temporary restraining order on April 11, 1996. The court shall decide both of those motions in this order.

claratory and injunctive relief as well as damages for actions taken by defendant Dr. Arla Genstler during the months of February and March 1996. Following the filing of the complaint, the court granted plaintiffs' motion for temporary restraining order. The order provided as follows:

1. The defendant, Arla Genstler, her agents, representatives, or others receiving a copy of this Temporary Restraining Order are hereby ordered to immediately cease and desist from acting to interfere with the care and treatment of patients or with the power, electricity or phones of Center for Site (sic) of Topeka, P.A.

2. The defendant, Arla Genstler, her agents, representatives, or others receiving a copy of this Temporary Restraining Order turn over all property she has taken from the offices of Center for Sight of Topeka, P.A., including all patient records, financial records, patient charts, billing information, computer information, floppy discs, computers, accounting records, account receivable records and documents other documents (sic) or information that she removed from the site along with all copies she has made of any of these documents to the offices of Center for Sight of Topeka, P.A. at Washburn Medical Park South, West suite, third Floor, 920 Washburn Avenue, Topeka, Kansas where they shall be maintained under the control of Dr. Michael Feifarek who is presently caring for patients.

3. The defendant, Arla Genstler, her agents, representatives, or others receiving a copy of this Temporary Restraining Order are hereby ordered to pay all money or proceeds collected from any account receivables or billings of Center for Sight of Topeka, P.A. into Court pending resolution of the ownership issues herein and further restrained from pledging, encumbering or assigning the assets of Center for Sight of Topeka, P.A., including all account receivables or billings.

4. The defendant, Arla Genstler, her agents, representatives, or others receiving a copy of this Temporary Restraining Order are hereby restrained from notifying any insurance carriers or other governmental agencies, including Medicare or Medicaid, to assign or otherwise transfer payments to Dr. Genstler or to anyone other than Center for Sight of Topeka, P.A.

5. The defendant, Arla Genstler, her agents, representatives, or others receiving a copy of this Temporary Restraining Order are further restrained from acting to interfere with EquiMed or Dr. Colkitt or to otherwise deny them or their representatives access to the books, medical records, financial documents or other records of Center for Sight of Topeka, P.A.

The TRO was extended upon the agreement of the parties until a hearing on plaintiffs' motion for preliminary injunction could be heard. The hearing was subsequently scheduled for April 12, 1996.

Several events have occurred since the filing of the TRO. Plaintiffs filed an amended complaint on March 21, 1996. In the amended complaint, plaintiffs added several causes of action for damages. On April 9, 1996, Dr. Colkitt voluntarily dismissed his claims against the defendant without prejudice pursuant to Fed.R.Civ.P. 41(a)(1). While this action was pending, another action was filed in state court relating to the events involved in this litigation. Center for Sight of Topeka, P.A., an entity intimately involved in the circumstances which form the basis of this case, filed suit seeking to enforce a covenant not to compete against Dr. Genstler. On April 4, 1996, the state court issued a temporary restraining order prohibiting Dr. Genstler from practicing medicine within fifty miles of the Center for Sight location. Dr. Genstler then filed a motion for temporary restraining order in this court seeking to stay the state court proceedings. The court conducted a hearing on this motion on April 11th. At that time, the court took the motion under advisement. Dr. Genstler filed another motion for temporary restraining order later that day. The court then heard evidence on the plaintiffs' motion for preliminary injunction and defendant's second motion for temporary restraining order on April 12th.

Having conducted a hearing on the pending motions, the court is now prepared to

issue the following findings of fact and conclusions of law.

*FINDINGS OF FACT*

1. In 1994, EquiMed, Inc., which was operating as EquiVision, Inc. at that time, purchased the assets of Dr. Bradford Prokop's ophthalmology practice in Topeka, Kansas. As part of the transaction, Center for Sight of Topeka, P.A., a professional corporation organized and existing under the laws of the State of Kansas, was formed. Dr. Prokop was the Center for Sight's sole shareholder. Dr. Prokop became an employee of Center for Sight and entered into a services agreement with EquiMed.

2. The services agreement provided that EquiMed would act as the exclusive business manager for the Center for Sight and would provide the office facilities, supplies, equipment and personnel necessary to operate an ophthalmology practice. The services agreement contained the following provision on fees:

> As compensation for its management services under Section 2 of this Agreement, and as compensation for the provision of the office facilities, services, supplies, equipment, personnel and other goods and services pursuant to Section 3 hereof, Eye Center agrees to pay to Equi-Vision a flat management fee equal to $120,000 per annum (payable $10,000 per month on the tenth (10th) day of each month), plus reimbursement (on a cost pass through basis) of all costs and expenses associated with the practice and incurred pursuant to Section 2 or Section 3 hereof (including all lease expenses and obligations for all locations of the office practice, the cost of equipment, the payroll, fringe benefits and payroll taxes of all non-medical employees, the costs of all supplies, malpractice insurance premiums, and payments required under all service contracts), *plus* an amount measured by and equal to the remaining net income of Eye Center after payment of compensation and expense reimbursement owed by Eye Center under the Employment Agreement or other contracts or arrangement with physicians and other professionals approved by EquiVision. Payment for invoices for ex-pense reimbursement for expenses incurred under Section 2 and Section 3 is due immediately upon receipt.

3. As security for payment of the management fees, Center for Sight granted EquiMed a security interest in all account receivables, inventory, equipment, machines, tools, fixtures, furnishings, leasehold improvements, furniture, accounts, contracts, contract rights, chattel paper and intangibles including the books and records, notes, instruments, licenses and trade names of the corporation. The services agreement also contained the following provision:

> Upon expiration or termination of this Agreement for any reason whatsoever, EquiVision shall be entitled, in addition to other remedies it may have at law or in equity, to receive all accounts receivable of Eye Center accrued as of the date of termination, plus all cash collections to date of termination ... and the Eye Center shall assign to EquiVision or its designee at EquiVision's option (without need to take any further action at such time) all of Eye Center's contract rights (including without limitation its rights under the Employment Agreement with Physician for periods after the date thereof) and its rights to the business records, patient lists, referring physician and other records, and all other business and financial records or Eye Center's professional practice at the Center. Eye Center (and Physician) shall not be entitled to copies of such records, it being agreed that the values in such records are to be part of EquiVision's compensation hereunder; provided, that Physician may have reasonable access to relevant medical records of all of his then current patients.

4. Dr. Arla Genstler graduated from medical school in 1986. After several residencies, she began practicing ophthalmology in 1990. In 1994, while working as an ophthalmologist in Salem, Oregon, Dr. Genstler learned of an opportunity to practice ophthalmology in Topeka, Kansas. She traveled to Topeka and eventually accepted employment with the Center for Sight. She signed an employment contract and began working at the Center for Sight on October 1, 1994.

5. In March 1995, Dr. Prokop decided to retire from the practice of ophthalmology. During that month, Dr. Prokop transferred his interest in the Center for Sight to Dr. Genstler for $1.00. Thereafter, Dr. Prokop resigned from his position as officer and director of Center for Sight on March 31, 1995. Dr. Genstler became the sole director of the Center for Sight. EquiMed continued to provide services to the Center for Sight under the services agreement.

6. In the months following her acquisition of the Center for Sight, Dr. Genstler became dissatisfied with the performance of EquiMed. She was concerned about staffing, equipment and billing among other things. In addition, she believed that her compensation was inadequate.

7. In February 1996, Dr. Genstler sent a letter to EquiMed terminating the services agreement effective no later than March 25, 1996. EquiMed responded with the following letter on March 13, 1996:

EquiMed, Inc. hereby accepts your formal notice of termination of the Services Agreement dated as of April 1, 1994 between Center for Sight of Topeka, P.A. ("Eye Center") and EquiMed, Inc. (successor to EquiVision, Inc.), to be effective as of Monday, March 25, 1996. EquiMed, Inc. denies that it has breached the Services Agreement, and you have been unable to provide us with any specific instances where EquiMed has breached the Services Agreement. However, rather than debating these issues further, we believe that it is best that we accept your termination of the Services Agreement.

We would like to remind you of Eye Center's continuing obligations under the Services Agreement including the obligations under Section 13.3 and Section 14 of the Services Agreement.

Effective as of March 25, 1996, neither Eye Center nor you will have any access to the premises located at 920 Washburn Avenue. Also, upon termination of the Services Agreement, EquiMed will be entitled to retain the accounts receivable and the books and records of the practice, except to the extent that Section 13.3 provides that you may have reasonable access to the

relevant medical records of all of your then current patients.

Our employee, Jan McEwen, will be working with you to assist in the wind-down process.

8. On Friday, March 15th, after the close of business, Dr. Genstler had the locks changed on the offices at the Center for Sight. Over the weekend, she gathered all of the patient records and patient lists at the Center for Sight and had them transported to another location. She also used the services of a former employee to gain access to an EquiMed computer. She obtained billing information from that computer and took it with her. She also took managed care contracts and her own personal computer from the site. She stored all of the records in a building at a local hospice. She had the local phone company send all of the Center for Sight's telephone calls to an answering service. She also mailed letters to over fifty insurance companies directing them to send payments for the patients of Center for Sight to her, not to the offices of the Center for Sight.

9. On Monday, March 18th, Dr. Genstler showed up at the offices of the Center for Sight. She subsequently learned that she was no longer welcome at the Center for Sight due to her activities over the weekend.

10. On or about March 18th, EquiMed arranged for Dr. Michael Feifarek, a board certified ophthalmologist with the Center for Sight of Northeast Kansas, to begin seeing Center for Sight patients. He saw several of Dr. Genstler's patients who had problems.

11. Following the removal of the records from the Center for Sight, Dr. Genstler had no plans for seeing and treating her patients. She had no facilities or equipment available to treat patients. She did not notify patients of her future plans.

## CONCLUSIONS OF LAW

### Plaintiff's Motion for Preliminary Injunction

1. In order to obtain preliminary injunctive relief, the moving party must establish: (1) the movant will suffer irreparable injury unless the injunction issues; (2) the

threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; (3) that the injunction, if issued, would not be adverse to the public interest; and (4) substantial likelihood that the movant will succeed on the merits. *Walmer v. U.S. Dept. of Defense,* 52 F.3d 851, 854 (10th Cir.), *cert. denied,* — U.S. ——, 116 S.Ct. 474, 133 L.Ed.2d 403 (1995). In the Tenth Circuit, if the movant has satisfied the first three requirements for a preliminary injunction, the movant may establish likelihood of success by showing questions going to the merits so serious, substantial, difficult and doubtful, as to make the issues ripe for litigation and deserving of more deliberate investigation. *Id.*

2. Plaintiff contends that it has met the standards for a preliminary injunction here. On the issue of the merits, plaintiff contends that the terms of the services agreement controls the determination of who owns the patient records and who should control them. Plaintiff further argues that irreparable harm will occur if the records are not maintained at the Center for Sight. Plaintiff further contends that the threatened injury to it outweighs whatever damage the injunction would cause the defendant. Finally, plaintiff asserts that the injunction would be in the public interest.

3. Defendant contends that the entire arrangement between EquiMed and Center for Sight constitutes the illegal practice of corporate medicine. She argues that the agreement requires her to split fees with EquiMed contrary to the provisions of K.S.A. 65–2837(b)(19). She further argues that the restrictions of the services agreement on the Center for Sight constitute the unauthorized practice of medicine by EquiMed. Finally, she contends that plaintiff has suffered no irreparable harm and that she has suffered considerable irreparable harm.

4. The court shall initially address the harm in this case. Plaintiff contends that the records must remain at the Center for Sight so that all patients will be able to be treated safely and responsibly. Plaintiff further argues that it will suffer incalculable loss if the defendant is allowed to use those records to exploit prior patient contracts, relationships and information contained in those records to acquire patients. Plaintiff also argues that the harm to it outweighs any harm to Dr. Genstler. Plaintiff notes that Dr. Genstler still has access to the records and can obtain copies whenever necessary. Finally, plaintiff notes that Dr. Genstler is not able at the present time to even practice ophthalmology in the Topeka area due to the restraining order issued by the state court.

█ 5. The court is persuaded that plaintiff and the patients of the Center for Sight would be irreparably harmed if the instant motion is not granted. The court is concerned that the safety and well-being of the patients of the Center for Sight might be harmed if the records were not ordered maintained there. The Center for Sight has physicians who are presently seeing and treating all patients. There is little dispute of their need for those records. In addition, the harm to plaintiff if the defendant is allowed to use these records to build a new practice is difficult to assess. Finally, we fail to see the defendant's need for these records at the present time since she is presently prevented from practicing ophthalmology in the Topeka area. In balancing the hardships here, the court is convinced, under the circumstances as they presently exist, that plaintiff would suffer more if this motion is not granted.

█ 6. The court also believes that the public interest is benefited by the granting of this motion. The records will remain at the location that patients are familiar with and where they are presently being treated. We note that the defendant does have access to these records and will continue to have access to them in the future.

█ 7. In turning to the merits, the court believes that the terms of the services agreement provide the controlling language for the issue at hand. The services agreement clearly provides that the records are the property of EquiMed or its designee if the agreement is terminated. Accordingly, the court finds that the plaintiff has sufficiently demonstrated its entitlement to the patient records and patient lists.

■ The court does not at this time intend to engage in a lengthy analysis of the legalities of the arrangement between EquiMed and the Center for Sight. The defendant has provided the court with only a cursory analysis of this issue. She has cited several cases in support of her position. These cases, however, do not command the result argued by the defendant. The court is well aware that in Kansas only appropriately created professional corporations may engage in the practice of medicine or hire physicians to do so. *See St. Francis Regional Medical Center, Inc v. Weiss,* 254 Kan. 728, 869 P.2d 606 (1994); *Early Detection Center, Inc. v. Wilson,* 248 Kan. 869, 811 P.2d 860 (1991). The instant relationship, on the surface, does not constitute a violation of that prohibition. EquiMed does not directly engage in the practice of medicine or employ physicians. The court shall consider at a later date whether the entire arrangement in this case constitutes a violation of the public policy prohibition against the corporate practice of medicine. At this point, the court is reasonably satisfied that plaintiff has demonstrated the likelihood of success on the merits under the standards in the Tenth Circuit.

8. In sum, the court shall grant plaintiff's motion for preliminary injunction.

*Plaintiff's Motion for Order of Replevin*

9. Plaintiff seeks an order allowing it to maintain full and exclusive control of all assets connected with the Center for Sight pending a final resolution of this case. Plaintiff's request is based upon the Kansas replevin statute, K.S.A. 60–1005.

10. A plaintiff may recover immediate possession of personal property by filing an affidavit or verified pleading that demonstrates (1) plaintiff is the owner of the property claimed, or is legally entitled to possession; (2) the property was wrongfully detained by the defendant; and (3) the estimated value of the property. K.S.A. 60–1005(a). An order for delivery of property may be entered "if the judge is satisfied as to the probable validity of plaintiff's claim and that delivery of the property to the plaintiff is in the interest of justice and will properly protect the interests of all the parties." K.S.A. 60–1005(b).

■ 11. For the reasons previously stated, the court finds that all the elements necessary for the entry of an order for delivery are present. The court is satisfied that the plaintiff has demonstrated that it is entitled to possession of the records at issue and that they were wrongfully detained by the defendant. The court is further persuaded that the interests of justice, as well as the interests of both parties, would be served by allowing plaintiff or its designee to retain possession of all records.

*Defendant's motion for temporary restraining order—Doc. #34*

12. The defendant seeks an order staying the proceedings of the state court action. The defendant seeks a stay until a determination can be made of the ownership of the Center for Sight. The defendant argues that this case is an in rem or quasi in rem action because it involves a determination of the ownership of the stock of the Center for Sight. The defendant then contends that the state court must yield to the federal court because this court had prior jurisdiction over the question of the ownership of the stock.

■ 13. In order to obtain a TRO, a party must demonstrate irreparable harm will occur unless injunctive relief is granted. 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure: Civil 2d* § 2951, p. 257 (1995). The issuance of a TRO is a matter that lies within the discretion of the district court. *Kansas Hospital Ass'n v. Whiteman,* 835 F.Supp. 1548, 1551 (D.Kan.1993). A TRO is designed to preserve the status quo until a hearing on the application for a preliminary injunction can be heard. *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 of Alameda County,* 415 U.S. 423, 439, 94 S.Ct. 1113, 1124, 39 L.Ed.2d 435 (1974).

14. Plaintiff points out that the issue of the ownership of the stock of the Center for Sight is no longer an issue in this case following the dismissal of all claims by Dr. Colkitt. Plaintiff notes that the issue of the stock ownership of the Center for Sight is exclusively within the jurisdiction of the state

court. Plaintiff asserts that the only issues in this case concern the property rights of EquiMed and the conversion of EquiMed's property by the defendant.

15. A concurrent action pending in state court is normally no bar to proceedings concerning the same matter in the federal court having jurisdiction. *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976). It is well-settled that federal courts have a "virtually unflagging obligation" to "exercise jurisdiction given them." *Id.* However, the law is also well established that when the same parties are involved in litigation that is in rem or quasi in rem, the court where the last suit was filed must yield jurisdiction. *Princess Lida of Thurn & Taxis v. Thompson,* 305 U.S. 456, 466, 59 S.Ct. 275, 280, 83 L.Ed. 285 (1939); *Cassity v. Pitts,* 995 F.2d 1009, 1012 (10th Cir.1993). To safeguard the integrity of its orders, the first court to assume jurisdiction over the res may even enjoin proceedings in the second. *United States v. $79,123.49 in U.S. Cash and Currency,* 830 F.2d 94, 97 n. 3 (7th Cir.1987). This is a departure from the general principle that neither a state nor federal court may issue an injunction against the other. *Id.* (citing *Donovan v. City of Dallas,* 377 U.S. 408, 84 S.Ct. 1579, 12 L.Ed.2d 409 (1964) (precluding state injunction of federal proceedings, but recognizing res exception) and 28 U.S.C. § 2283 (precluding federal injunctions of state proceedings, with exceptions)).

16. The court does not find that a TRO staying the state court action would be appropriate here. We note initially that different parties are engaged in the two cases. The principle sought to be applied by the defendant requires that the same parties be involved in the litigation proceeding before the state and federal courts. Moreover, given the dismissal of all claims by Dr. Colkitt in this action, we do not believe that the issue of the ownership of the stock of the Center for Sight is before this court. Accordingly, the court shall deny plaintiff's motion for a temporary restraining order.

*Defendant's motion for temporary restraining order—Doc. # 43*

17. Defendant seeks an order (1) barring plaintiff from interfering with her practice of medicine—specifically, from defaming her to insurance providers, medical professionals in Topeka, and to patients; (2) barring plaintiff from giving misinformation about her whereabouts, her eligibility to practice medicine locally, and her willingness and ability to service patient needs; (3) barring plaintiff from harassing her by initiating or continuing duplicative, vexatious litigation in other courts covering the same issues and facts already before this court.

18. The court shall not grant this motion. The court does not find the requests made by defendant appropriate under the circumstances that presently exist. The court is not persuaded that the defendant will suffer irreparable harm if this motion is not granted. The court notes the defendant is presently unable to practice ophthalmology in the Topeka area so there seems to be little likelihood of interference with the defendant's practice. Any defamation engaged in by the plaintiff can be rectified through a judgment for damages. On this issue, the court would note that it heard no evidence of any defamatory statements made by EquiMed or its employees. Finally, the last request made by the defendant borders on being frivolous. There is no evidence that plaintiff has filed any duplicative or vexatious litigation. If such litigation is instituted, the court in which it is filed can award sanctions, including attorney's fees.

**IT IS THEREFORE ORDERED** that plaintiff's motion for preliminary injunction (Doc. # 42) be hereby granted. The security already provided by plaintiff shall continue in effect.

**IT IS FURTHER ORDERED** that defendant is hereby enjoined from (1) denying plaintiff or its representatives access to the books, medical records, financial documents or other records of Center for Sight of Topeka, P.A.; and (2) notifying any insurance carriers or other governmental agencies, including Medicare and Medicaid, to assign or otherwise transfer payments to defendant or

to anyone other than the Center for Sight of Topeka, P.A.

**IT IS FURTHER ORDERED** that plaintiff's motion for replevin (Doc. # 42) be hereby granted. All property of the Center for Sight of Topeka, P.A., shall remain in possession of the plaintiff or its designee pending resolution of this action.

**IT IS FURTHER ORDERED** that defendant's expedited motion for temporary restraining order (Doc. # 34) be hereby denied.

**IT IS FURTHER ORDERED** that defendant's motion for temporary restraining order (Doc. # 43) be hereby denied.

**IT IS SO ORDERED.**