## COMMONWEALTH vs. ERIC C. WOODS.

Worcester. January 7, 1993. - February 18, 1993.

Present: LIACOS, C.J., WILKINS, ABRAMS, NOLAN, & GREANEY, JJ.

*Constitutional Law*, Double jeopardy. *Collateral Estoppel. Practice, Criminal*, Double jeopardy, Collateral estoppel, Lesser included offense, "Two-tier" court system, Conduct of prosecutor. *Motor Vehicle*, Operation, Ownership, Homicide. *Evidence*, Ownership, Inference, Judicial discretion.

Discussion of *Grady* v. *Corbin*, 495 U.S. 508 (1990), and other cases, with respect to principles of double jeopardy applicable to evidence presented in a criminal prosecution. [346-349]

At the de novo trial of two counts of vehicular homicide by negligent operation, conducted after the defendant had been acquitted at a bench trial of two counts of vehicular homicide while under the influence of alcohol arising out of the same circumstances, principles of double jeopardy, enunciated in *Grady* v. *Corbin*, 495 U.S. 508 (1990), did not bar introduction of evidence of the defendant's consumption of alcohol before the fatal accident [349-351]; furthermore, double jeopardy principles did not apply to a defendant's appeal under the de novo trial system [351-353].

Principles of collateral estoppel did not bar the introduction of evidence of the defendant's consumption of alcohol before a motor vehicle accident at the de novo trial of two counts of vehicular homicide by negligent operation, conducted after the defendant's acquittal at a bench trial of two counts of vehicular homicide while under the influence of alcohol arising out of the same circumstances. [353-354]

At a criminal trial, there was ample evidence that the defendant was the operator of a motor vehicle to support the jury's verdicts of guilty of two counts of vehicular homicide and a charge of operation after suspension of license. [354-355]

At a criminal trial, the judge made no errors in his rulings with respect to the admission or exclusion of certain evidence. [355-357]

At a criminal trial, statements and actions by the prosecutor during closing arguments did not amount to prosecutorial misconduct requiring a mistrial. [357-358]

COMPLAINT received and sworn to in the Dudley Division of the District Court Department on March 27, 1990.

On appeal to the jury session of the Worcester Division, pretrial motions were heard by *Elliott L. Zide*, J., and the case was tried before him.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Donald A. Harwood* (*Conrad W. Fisher* with him) for the defendant.

*Michael Edmond Donnelly*, Assistant District Attorney, for the Commonwealth.

NOLAN, J. The defendant, Eric C. Woods, appeals from convictions on two separate counts of vehicular homicide by negligent operation,[1] G. L. c. 90, § 24G (*b*) (1990 ed.), and one count of operating a motor vehicle after the suspension of a license pursuant to G. L. c. 90, § 24N (1990 ed.). We transferred this case on our own motion, and we now affirm the convictions.

The defendant's convictions stem from a motor vehicle accident in which two people were killed. The accident occurred at 12:52 A.M. on November 17, 1989, in Dudley. After drinking at a local establishment, Jonathan Edgerly, Patrick Donnelly, Todd Gillis, and the defendant entered a Ford Bronco motor vehicle belonging to the defendant's father. Not long after that, the motor vehicle careened off the road and struck a tree. When help arrived, they found Edgerly and Donnelly dead in the back seat of the vehicle. In the front seat, both Gillis and Woods were seriously injured. They were taken by police and emergency personnel to a hos-

---

[1] General Laws c. 90, § 24G (*b*) (1990 ed.), reads in part: "Whoever, upon any way or in any place to which the public has a right of access or upon any way or in any place to which members of the public have access as invitees or licensees, operates a motor vehicle recklessly or negligently so that the lives or safety of the public might be endangered and by any such operation causes the death of another person, shall be guilty of homicide by a motor vehicle and shall be punished by imprisonment in a jail or house of correction for not less than thirty days nor more than two and one-half years, or by a fine of not less than three hundred nor more than three thousand dollars, or both."

pital for treatment of their injuries. At the hospital, Woods disclosed to the emergency personnel that he had drunk some beer earlier in the evening. His blood alcohol level was tested, and it registered .03 several hours after the incident.[2]

Woods was charged in the District Court with (1) operating under the influence of alcohol in violation of G. L. c. 90, § 24; (2) two separate counts of vehicular homicide while under the influence of alcohol under G. L. c. 90, § 24G; (3) two separate counts of vehicular homicide by negligent operation in violation of G. L. c. 90, § 24G (*a*); (4) operating to endanger in violation of G. L. c. 90, § 24; and (5) operating after the suspension of his license pursuant to G. L. c. 90, § 24N. After opting for a bench trial, Woods was found guilty only on the counts in (3) and (5), above. As to the counts in (1) and (2), Woods was found not guilty. The remaining charge, operating to endanger, was dismissed as duplicative.

The defendant then exercised his right to trial de novo pursuant to G. L. c. 218, § 26A (1990 ed.). He filed two motions in limine. The first requested that the Commonwealth be precluded from offering any evidence pertaining to his alcohol consumption on the ground that he had been acquitted of all alcohol-related charges at the bench trial. The second motion requested that the Commonwealth be precluded from offering any evidence regarding ownership of the Ford Bronco by the defendant's father on the ground that such evidence would be unfairly prejudicial to the defendant on the issue of who was operating the vehicle at the time of the accident. The trial judge denied both motions. A jury of six found the defendant guilty on the same counts. He filed a timely appeal.

The defendant alleges several errors in his appeal. We shall address them seriatim.

---

[2]We note that a blood alcohol level at or below five one-hundredths (.05) entitles the defendant to a presumption that he was not under the influence of intoxicating liquor. G. L. c. 90, § 24 (1) (*e*) (1990 ed.).

1. *Double jeopardy.* The Fifth Amendment to the United States Constitution prohibits the Federal government from subjecting a defendant to more than one prosecution for the same offense.[3] This prohibition was extended to the State governments through the due process clause of the Fourteenth Amendment. *Benton* v. *Maryland,* 395 U.S. 784, 794 (1969). Although not expressly included in the Massachusetts Declaration of Rights, the guarantee against double jeopardy has long been recognized as part of our common law, see *Thames* v. *Commonwealth,* 365 Mass. 477, 479 (1974), and our statutory law, see G. L. c. 263, § 7 (1990 ed.). The defendant contends that his prosecution in the second trial was barred on double jeopardy grounds under the "same conduct" test announced in *Grady* v. *Corbin,* 495 U.S. 508 (1990). In *Grady, supra* at 510, the United States Supreme Court held that "the Double Jeopardy Clause bars a subsequent prosecution if, to establish an essential element of an offense charged in that prosecution, the government will prove conduct that constitutes an offense for which the defendant has already been prosecuted."[4] To establish that he had committed vehicular homicide by negligent operation of a motor vehicle, Woods argues that the Commonwealth proved conduct for which he had already faced prosecution, namely, driving while intoxicated. Woods concludes that in light of *Grady* the judge should have excluded any evidence relating to the influence of alcohol. The failure of the judge to exclude such evidence, Woods maintains, subjected him to double jeopardy.[5]

---

[3]The double jeopardy clause of the Fifth Amendment to the United States Constitution provides, "[N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb."

[4]The test effectuates three protections embodied in the double jeopardy clause: "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *Grady* v. *Corbin,* 495 U.S. 508, 510 (1990), quoting *North Carolina* v. *Pearce,* 395 U.S. 711, 717 (1969).

[5]Double jeopardy protection applies equally to bench and jury trials. *United States* v. *Morrison,* 429 U.S. 1, 3 (1976).

We conclude that the defendant has misinterpreted the holding in *Grady* and misapplied it to the facts of his case. Essentially, the defendant interprets *Grady* as precluding from use in a subsequent trial any evidence that was used to support the prosecution's case in the original trial. This interpretation, however, finds no support in the language of the *Grady* decision. The *Grady* Court explicitly refused to adopt an "actual evidence" or a "same evidence" test for double jeopardy. *Id.* at 521.[6] Instead, the Court reaffirmed its previous position that "the presentation of specific evidence in one trial does not forever prevent the government from introducing that same evidence in a subsequent proceeding." *Id.* at 521-522, citing *Dowling v. United States*, 493 U.S. 342 (1990). The *Grady* Court's disavowal of the "same evidence" test was reiterated most recently in *United States v. Felix*, 112 S. Ct. 1377, 1382 (1992). On the other hand, the *Grady* Court noted that "a State cannot avoid the dictates of the double jeopardy clause merely by altering in successive prosecutions the evidence offered to prove the same conduct." *Grady, supra* at 522. The Court explained that "the critical inquiry is what *conduct* the State will prove, not the *evidence* the State will use to prove that conduct" (emphasis added). *Id.*

In *Grady*, the defendant pleaded guilty to driving while intoxicated and failure to keep right of the median strip. *Id.* at 512-513. In a subsequent prosecution, the State sought to use proof of this same *conduct*, driving while intoxicated and failure to keep right of the median strip, to prove vehicular homicide by operation of a motor vehicle in a criminally negligent and reckless manner. *Id.* at 514. The prosecution ad-

---

[6]The *Grady* Court also noted that the older *Blockburger* test for double jeopardy, see *Blockburger* v. *United States*, 284 U.S. 299, 304 (1932), "has nothing to do with the evidence presented at trial," *Grady, supra* at 521 n.12. The Court went on to say that "[a] true 'same evidence' test would prevent the government from introducing in a subsequent prosecution any evidence that was introduced in a preceding prosecution. It is in this sense that we discuss, and do not adopt, a 'same evidence' or 'actual evidence' test." *Id.*

mitted that it would prove "the entirety of the conduct for which [the defendant] was convicted . . . to establish the essential elements of the homicide and assault offenses." *Id.* at 523. In other words, the prosecution in the second trial attempted to use the same evidence from the first trial to prove the same conduct. Because the defendant in *Grady* had already been prosecuted for the conduct offered for proof of the subsequent charges, the Court held that the second prosecution was barred by the double jeopardy clause. *Id.*

In fashioning its decision, the *Grady* Court expressly adopted the dicta of an earlier opinion, *Illinois* v. *Vitale*, 447 U.S. 410 (1980). In *Vitale*, the motor vehicle driven by the defendant struck and killed two children. *Id.* at 411. Vitale was convicted of failing to reduce speed to avoid an accident. *Id.* at 412. He was then tried a second time for involuntary manslaughter based on reckless driving. *Id.* at 413. The Court applied the *Blockburger* v. *United States*, 284 U.S. 299 (1932), test to the issue of double jeopardy. Successive prosecutions are constitutionally valid under the *Blockburger* test if the crime in each prosecution "requires proof of a fact which the other does not."[7] *Vitale, supra* at 416. When the prosecution is required to prove a separate set of facts in a subsequent prosecution, the defendant is not placed twice in jeopardy for the same offense. See *id.* In *Vitale*, the Court reasoned that if the charge of failure to reduce speed did not require proof of a fatality and, conversely, if the failure to reduce speed was not a statutory element of the involuntary manslaughter charge, then the defendant was not being tried twice for the same offense. *Id.* at 418-419. However, the *Vitale* Court cautioned that if the State found it "necessary

---

[7]The *Blockburger* test is identical to the so-called *Morey* test applied by this court in double jeopardy cases to distinguish offenses under criminal statutes which do not address the question of consecutive punishments. *Morey* v. *Commonwealth*, 108 Mass. 433, 434 (1871). In light of double jeopardy concerns, if two offenses describe the same conduct, then we presume that the Legislature did not intend consecutive punishments. See *Commonwealth* v. *Alvarez*, 413 Mass. 224, 230-232 (1992). The *Morey* test has a long history in the common law of Massachusetts. *Id.*

to prove a failure to slow or to rely on conduct necessarily involving such failure," then the defendant would have a double jeopardy claim "because [he] has already been convicted for *conduct* that is a necessary element of the more serious crime for which he has been charged" (emphasis added). *Id.* at 420.

In *United States* v. *Felix*, 112 S.Ct. 1377, 1384-1385 (1992), the Court limited its holding in *Grady*. The *Felix* Court held that "prosecution of a defendant for conspiracy, where certain of the overt acts relied upon by the Government are based on substantive offenses for which the defendant has been previously convicted, does not violate the Double Jeopardy Clause." *Id.* at 1380. Felix was prosecuted for attempting to manufacture drugs in Missouri, convicted, and subsequently tried in Oklahoma for manufacturing drugs and conspiracy to manufacture drugs. *Id.* at 1382. Despite the prosecution's use of the same evidence presented in the first trial, the Court held that the second prosecution was not barred by the double jeopardy clause. *Id.* at 1383, 1385. The *Felix* Court refused to read literally the "same conduct" test announced in *Grady*. *Id.* at 1383-1384. Although the Court acknowledged that the continuing criminal conduct offered as evidence in both trials was the same, the actual crimes charged in each case differed in both time and place, and, therefore, the Court held that the defendant was not tried twice for the same offense. *Id.* at 1382.[8] "[A] mere overlap in proof between two prosecutions," the Court explained, "does not establish a double jeopardy violation." *Id.* at 1382.

We read the *Grady* opinion as redefining the phrase "same offense" in the double jeopardy clause. *Grady* substitutes for "same offense" the phrase "conduct that constitutes an offense for which the defendant has already been prosecuted," *supra* at 510. This redefinition does not make *Grady* a "same transaction" test, rejected by this court in *Commonwealth* v.

---

[8]With regard to the conspiracy charge, the court held that a substantive crime and a conspiracy to commit that crime are not the "same offense" for double jeopardy purposes. *United States* v. *Felix*, 112 S.Ct. 1377, 1384 (1992).

*Gallarelli*, 372 Mass. 573, 578 (1977), because the conduct must also constitute a crime for which the defendant has already been tried. Thus, the narrow issue presented to us by *Grady* is whether in the second trial the Commonwealth proved conduct constituting an offense for which the defendant, Woods, had already been prosecuted. After reviewing the record, we hold that *Grady* does not apply.

Woods' acquittal in his first trial resolved only one factual issue: he was not driving while under the influence of alcohol.[9] In the second trial, the Commonwealth used the same evidence to prove that the defendant had been negligent. The crucial point for *Grady* purposes is that a reasonable jury could (and did) find the defendant negligent though not intoxicated. The two offenses were not the same. "Two offenses are not the 'same' within the meaning of the double jeopardy clause merely because they stem from the same conduct." *Costarelli* v. *Commonwealth*, 374 Mass. 677, 683 (1978), citing *Morey* v. *Commonwealth*, 108 Mass. 433, 434 (1871). Drinking before driving, although irresponsible and reprehensible, is not conduct that constitutes an offense for which Woods had been prosecuted. The Commonwealth offered evidence concerning alcohol, not to show that he drove while under the influence of alcohol or that he was legally "intoxicated," but to prove that he had been drinking before the accident as evidence of negligent operation of a motor vehicle. Evidence that the defendant was consuming alcohol prior to driving with passengers late at night is patently relevant to whether the defendant exercised reasonable care while driving. As the United States Supreme Court noted in *Felix*, "the introduction of relevant evidence of particular misconduct in a case is not the same thing as prosecution for that conduct," *supra* at 1383. If, on the other hand, the prosecution needed to show that the defendant was driving while intoxicated to prove negligent operation, i.e., the first offense

---

[9]Because the defendant was acquitted on the issue of driving while under the influence of alcohol, he was entitled to a jury instruction on that point. After reviewing the trial judge's instructions, we believe they adequately protected the defendant's rights in this regard.

was an essential element of the second, then the prosecution would be barred under Massachusetts law, see *Costarelli, supra* at 683 (double jeopardy bars subsequent prosecution for lesser included offense), as well as under *Grady*.[10] Cf. *Grady, supra* at 523. Thus, although the evidence presented at both trials was the same, the specific conduct at issue was not.

When viewed in light of the Commonwealth's two-tier trial system, see generally *Lydon v. Commonwealth*, 381 Mass. 356, cert. denied, 449 U.S. 1065 (1980), the defendant's double jeopardy claim is even less persuasive. The defendant asks this court to allow him to take advantage of a second opportunity for acquittal while simultaneously handicapping the prosecution's case against him. Unquestionably, the issue whether the defendant was driving while intoxicated has been resolved by his acquittal in the first-tier trial. That issue is precluded from the second-tier trial on double jeopardy grounds since an acquittal operates to end original jeopardy. G. L. c. 263, § 7. *Justices of Boston Mun. Court v. Lydon*, 466 U.S. 294, 308 (1984). The defendant, however, is mistaken in claiming that because double jeopardy bars retrial of the drunk driving charges, it necessarily precludes admission of any evidence used in the prosecution of those charges. This claim is without merit under Federal law, the law of the Commonwealth and common sense.

First of all, in our two-tier trial system, a defendant convicted of charges in the first-tier trial remains in "continuing jeopardy" until judgment is final in the second-tier trial. *Jus-*

---

[10]In his first trial Woods was acquitted of vehicular homicide while driving under the influence of alcohol but convicted of what was essentially the lesser included offense of vehicular homicide by negligent operation. Both charges require proof of negligent operation, but vehicular homicide while under the influence requires, additionally, proof of intoxication. G. L. c. 90, § 24G. Woods, therefore, was never acquitted of the lesser included charge. Unlike Grady, who in his second prosecution faced a new, more severe charge based wholly upon his conviction of a lesser included charge, Woods faced "continuing jeopardy" with regard to the lesser included charge, see *infra* this section, and never again faced prosecution for the greater offense.

*tices of Boston Mun. Court* v. *Lydon, supra* at 308. Original jeopardy continues because the defendant may appeal any conviction automatically and need not plead error. G. L. c. 218, § 26A. *Justices of Boston Mun. Court* v. *Lydon, supra* at 304-305. Trial de novo is a unified process where, at the defendant's request, the previous judgment is "wiped out," and the case begins anew. *Mann* v. *Commonwealth*, 359 Mass. 661, 666 (1971). See also *Enbinder* v. *Commonwealth*, 368 Mass. 214, 217, cert. denied, 423 U.S. 1024 (1975), and cases cited. Thus, although original jeopardy for Woods with regard to the drunk driving charges terminated on acquittal, he remained in continuing jeopardy with regard to the other offenses of which he was convicted. Any evidence of conduct which supported those original convictions naturally remains part of the continuing case and, therefore, cannot be barred on double jeopardy grounds.

Second, because the defendant remained in continuing jeopardy, he faced only one prosecution. Double jeopardy intervenes to protect defendants from facing multiple prosecutions for the same offense. "[T]he State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." *Costarelli, supra* at 681, quoting *Green* v. *United States*, 355 U.S. 184, 187-188 (1957). In *Grady*, the defendant was subjected to two separate prosecutions for the same offense. In the first trial he faced only misdemeanor charges; in the second, the government brought felony charges and based its case on the lesser included offenses of which he was convicted in the first trial. In stark contrast, Woods was not *prosecuted* twice but, rather, he himself chose to be *tried again* in the hope of securing acquittals to replace previous convictions.[11] There was

---

[11]The United States Supreme Court has repeatedly upheld the trial de novo system against double jeopardy claims. See *Justices of Boston Mun.*

no government oppression. See *Lydon* v. *Commonwealth, supra* at 366. In such circumstances, double jeopardy is not triggered. *Lydon* v. *Commonwealth, supra* at 356, 359-360, 365 (double jeopardy not implicated when defendant voluntarily chooses bench trial then trial de novo).

For these reasons, we hold that the defendant's double jeopardy claim fails.

2. *Collateral estoppel.* The defendant argues that because he was found not guilty of driving while under the influence, the Commonwealth was precluded on collateral estoppel grounds from introducing in the second trial any evidence regarding his consumption of alcohol. He claims that the trial judge erred in denying his motion to exclude such evidence. For the reasons stated above, this claim is without merit.

The doctrine of collateral estoppel operates in criminal proceedings as part of the guarantee against double jeopardy. *Commonwealth* v. *Scala*, 380 Mass. 500, 503-504 (1980). Contrary to the defendant's claim, the doctrine has a narrow application: "[w]hen an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Commonwealth* v. *Pero*, 402 Mass. 476, 477 (1988), quoting *Ashe* v. *Swenson*, 397 U.S. 436, 443 (1970). It applies to factual issues, not evidence. See *Commonwealth* v. *Benson*, 389 Mass. 473, 478, cert. denied, 464 U.S. 915 (1983). As stated above, the only issue of fact foreclosed by the first trial was whether the defendant was driving while intoxicated. The Commonwealth was estopped from raising that issue in the trial de novo. "The doctrine of collateral estoppel will preclude either the subsequent prosecution or the introduction or argument of certain facts, only if the jury could not have based their verdict rationally on an issue other than the one the defendant seeks to foreclose." *Benson, supra* at 478. To prove negligent operation, the Common-

---

*Court* v. *Lydon*, 466 U.S. 294, 304-305 (1984). Moreover, the State need not provide review of a bench trial beyond trial de novo. *Griffin* v. *Illinois*, 351 U.S. 12, 18 (1956).

wealth did not have to establish that the defendant was intoxicated. A jury could have reasonably inferred negligence from the circumstances of the accident as well as from evidence that the defendant was drinking without reaching further to decide whether or not he was intoxicated. Cf. *Pero, supra* at 478 (conviction upheld when reasonable basis existed for jury decision other than issue foreclosed by first trial). The charges of negligent operation and driving while under the influence involve distinctly separate factual issues. *Id.* at 478 (possession with intent to distribute drugs and conspiracy to traffic in drugs involve separate issues for collateral estoppel purposes). Collateral estoppel, therefore, does not bar the admission of evidence that this defendant consumed alcohol before the accident. *Commonwealth v. Kline*, 19 Mass. App. Ct. 715, 718-719 (1985) (although defendant found not guilty of failure to obey traffic signal, State not precluded at de novo trial from showing color of traffic signal at time of accident when issue was negligent operation).

We hold that the trial judge did not err in denying the defendant's motion to exclude evidence on collateral estoppel grounds.

3. *Insufficient evidence.* The defendant asserts that the trial judge erred in failing to allow his motion for a required finding of not guilty based on insufficient evidence that the defendant was the operator of the motor vehicle at the time of the accident. After reviewing the record, we conclude that there was ample evidence to support a jury verdict.

A motion for a required finding of not guilty will be allowed only where "the evidence is insufficient as a matter of law to sustain a conviction on the charge." Mass. R. Crim. P. 25 (a), 378 Mass. 896 (1979). We review the evidence in the light most favorable to the prosecution to determine whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Commonwealth v. Latimore*, 378 Mass. 671, 677 (1979), quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We note further that a conviction may rest entirely on circumstantial evidence. *Commonwealth v. Donovan*, 395 Mass. 20, 25 (1985).

In this case, to prove that the defendant was operating the motor vehicle at the time of the accident, the prosecution offered testimony that (1) the defendant was found in the front seat of the car with his legs in the driver's side foot well; (2) his foot was wedged under the brake pedal; (3) his chest injuries were consistent with impact against the steering wheel; (4) the motor vehicle was owned by his father. We hold that a rational jury could infer from this evidence that the defendant was operating the motor vehicle.

4. *Rulings on evidence.* The defendant claims the trial judge committed reversible error when ruling on three evidentiary matters. First, he claims that evidence concerning the possession of marihuana by a person who was also found in the front seat of the motor vehicle was improperly excluded. He argues that such evidence is probative of who was operating the motor vehicle at the time of the accident. This argument presumes that from the mere evidence of possession the jury could have inferred that (1) the person ingested the marihuana; (2) the marihuana produced a degradation of his motor skills; (3) such a degradation of motor skills could have caused an accident similar to the one at issue here, and, therefore, (4) that person might have been driving. Such a chain of inference is tenuous at best and, without any supporting evidence, approaches impermissible speculation at worst. It opens up collateral issues regarding the possession and use of marihuana among the passengers as well as stirring up prejudice. It is well within the trial judge's discretion to determine if the prejudicial effect of such evidence outweighs its probative value. *Commonwealth v. D'Agostino*, 344 Mass. 276, 279, cert. denied, 371 U.S. 852 (1962). The trial judge's determination stands, absent palpable error. *Commonwealth v. Dunn*, 407 Mass. 798, 807 (1990), and cases cited. Considering its limited probative value, we believe the trial judge committed no error by excluding such evidence. See *Commonwealth v. Scott*, 408 Mass. 811, 816 (1990) (admission of evidence of crimes committed by individuals other than the defendant will not be disturbed on appeal unless justice requires reversal).

Second, the defendant claims the trial judge erroneously denied his motion to exclude evidence concerning the identity of the motor vehicle's owner. He argues that such evidence was not probative of who was driving and was, in fact, unduly prejudicial. The defendant, however, fails to describe specifically what prejudice resulted from the admission of this evidence. He states that the jury could infer from this evidence that the defendant operated the motor vehicle because his father owned it. This inference, he claims, is impermissible. What the defendant has done is to imply that the probative aspect of the evidence is actually the unfair prejudicial element. We note that evidence is not prejudicial simply because it harms the defendant's case. Any evidence which "throws light" on an issue is properly admitted. *Commonwealth v. Palladino*, 346 Mass. 720, 726 (1964). Evidence that his father owned the motor vehicle makes it more likely than not that the defendant was in fact its driver. Without a showing that the prejudicial effect outweighs the probative value, relevant evidence is admissible.[12] *Green v. Richmond*, 369 Mass. 47, 59 (1975). Consequently, we conclude that there was no abuse of discretion in admitting this evidence.

Third, the defendant claims that the trial judge should have excluded evidence that the arresting officer handed the defendant's parents a citation for the defendant as impermissible opinion evidence, and that his failure to do so shifted the burden of proof in violation of due process principles. We note, first of all, that the police were required to establish that a citation for the accident was given to the defendant or sent to his residence for the charge of operation after the suspension of a license, G. L. c. 90C, § 2 (Supp. 1991), although the vehicular homicide charges carried no such requirement. Of course, the evidence could be used for

---

[12]We note here that the defendant cites in his brief an incorrect test for the admissibility of evidence. Even evidence that is barely probative may be, nonetheless, relevant and therefore admissible unless outweighed by prejudice to the defendant. See *Green v. Richmond*, 369 Mass. 47, 59 (1975).

purposes beyond the intent of the statute which might prove unfairly prejudicial to a defendant. In this case, however, the record clearly shows that the evidence regarding the citation was strictly circumscribed before and after the defense counsel's objection. No mention was made of the charges listed on the citation, and any prejudice involved in identifying who received the citation amounted to harmless error in light of the other evidence presented. We conclude, therefore, that there was no prejudicial error.

5. *Prosecutorial misconduct.* The defendant claims that the judge erred in not granting him a mistrial after the prosecutor made appeals to the sympathy of the jury. The defendant cites three specific incidents. After reviewing these incidents, we conclude that the defendant did not suffer undue prejudice, and therefore a mistrial was not warranted.

The defendant draws this court's attention first to the prosecution's closing argument. The prosecutor stated that the defendant was more "fortunate" than the other passengers who died in the accident. Although this statement surely evoked an emotional reaction, it did not require a mistrial. It is well within the trial judge's discretion to deny a mistrial on the ground of prosecutorial misconduct and to rely on appropriate curative instructions even in the case of intentional misstatements by the prosecution. *Commonwealth* v. *Charles*, 397 Mass. 1, 12 (1986). Of course, any claim of prejudice must be examined in the context of the trial. In this case, the statement accurately described the results of the accident. *Commonwealth* v. *Quigley*, 391 Mass. 461, 464 (1984), cert. denied, 471 U.S. 1115 (1985) (ironic statement based on the evidence not misconduct). Moreover, the prosecutor's statement concerning the deaths of two passengers was neither irrational nor irrelevant to the charge of vehicular homicide by negligent operation. *Commonwealth* v. *Clary*, 388 Mass. 583, 592 (1983) (extended characterization of the defendant as a lesbian constituted misconduct). *Commonwealth* v. *Shelley*, 374 Mass. 466, 470-471 (1978) *S.C.*, 381 Mass. 340 (1980) (repeated ridicule of defendant's witnesses constituted misconduct). Furthermore, in labelling the

defendant "fortunate" the prosecutor was responding to defense counsel's own characterization of the defendant. To some extent, therefore, the prosecutor's words were intended to reframe the case for the jury.

Next, the defendant claims error in the prosecutor's argument that his recollection was that at the hospital the defendant asked only about "my truck" and not about the other passengers. Closing arguments are reviewed in light of jury instructions and the evidence presented during trial. *Commonwealth* v. *Lamrini*, 392 Mass. 427, 432 (1984). In this case, the issue of who was driving at the time of the accident was hotly contested. Defendant's statements concerning "my truck" were highly probative of that issue. Thus, the argument was not made solely to stir up resentment against the defendant. With regard to any prejudicial effect, the judge instructed the jury not to allow sympathy to control their decision and to view the closing statements as arguments but not evidence. Since the prosecutor was again relying on the evidence presented at trial and not his imagination, the jury instructions adequately responded to any injury the defendant may have suffered from this argument.

Lastly, the defendant strongly objects to the identification of the victims' parents in the courtroom. We agree with the defendant that such tactics which appeal solely to the sympathy of the jury should not be condoned. In the context of this trial, however, the defendant was not unfairly prejudiced. We note that defense counsel asked a witness on cross-examination to point out the *defendant's* parents, who were sitting in the courtroom. Furthermore, both the prosecution and defense counsel referred to the parents and families of the passengers and the defendant several times throughout the trial. Therefore, there was no error.

When mitigating factors were present at trial, and curative instructions were read to the jury, we defer to the judgment of the trial judge, who was in the better position to determine the prejudice to the defendant in the context of the trial. *Commonwealth* v. *Martino*, 412 Mass. 267, 281-282 (1992). We hold that these statements and actions by the prosecution

do not amount to prosecutorial misconduct requiring a mistrial.

For these reasons, we conclude that there were no prejudicial errors at trial, and, therefore, we affirm the convictions.

*Judgments affirmed.*