### ARTHUR E. MAHONEY *vs.* COMMONWEALTH.

Suffolk. March 1, 1993. - May 17, 1993.

Present: LIACOS. C.J.. NOLAN, LYNCH, O'CONNOR, & GREANEY, JJ.

*Constitutional Law*, Double jeopardy. *Abuse Prevention. Contempt. Practice, Civil*, Contempt. *Practice, Criminal*, Contempt.

Principles of double jeopardy did not prohibit the criminal prosecution of a violation of a protective order issued under G. L. c. 209A, after sanctions under that statute for civil contempt of the same order had been imposed. [283-287]

The procedure followed by a District Court judge in imposing sanctions for civil contempt for violation of a protective order issued under G. L. c. 209A, whereby the contemnor was given notice, was represented by counsel and was given an opportunity to be heard, was lawful. [287]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on March 10, 1992.

The case was reported by *Nolan*, J.

*Richard K. Donahue, Jr.*, for the plaintiff.

*Michael Adam Chinman*, Assistant District Attorney, for the Commonwealth.

LYNCH, J. A single justice of this court has reserved and reported this action under G. L. c. 211, § 3 (1990 ed.), which seeks dismissal of certain criminal charges on the ground of double jeopardy. At issue is whether the Commonwealth may prosecute the plaintiff (hereinafter, defendant) on charges which he contends are based on the same conduct that resulted in his being adjudged in contempt for violating a protective order issued under G. L. c. 209A, § 7 (1990 ed.) (Abuse Prevention Act). We conclude that the judgment of contempt does not bar the Commonwealth from prosecuting the defendant on the pending charges.

In December, 1990, as a result of proceedings initiated by the defendant's wife, a judge in the Ayer Division of the District Court Department issued a series of protective orders under G. L. c. 209A, § 7, ordering inter alia, the defendant to refrain from abusing his wife and to remain away from her household. The orders were effective through March 24, 1992.

In February, 1991, as a result of proceedings initiated by the defendant's girl friend, a judge in the same court issued orders that the defendant refrain from abusing his girl friend and immediately leave and remain away from her household. These orders were effective until February 25, 1992.[1]

On December 11 and 12, 1991, two criminal complaints were issued charging the defendant with assault and battery on his wife, and with violating a protective order and making criminal threats against his girl friend.[2] At the arraignment in the Ayer District Court, a judge held a contempt hearing to decide whether the defendant's conduct, as alleged in the criminal complaints, violated the protective orders.[3] The de-

---

[1]On December 11, 1991, a judge issued a similar set of restraining orders and included a provision that the defendant have "no contact directly or indirectly with [his girl friend], including telephone communication." These orders were made effective until December 16, 1992.

[2]In bills of particulars provided to the defendant in February, 1992, the Commonwealth described the charges as follows: (1) the assault and battery allegedly occurred on December 10, 1991, at the wife's household when the defendant "did assault and beat [his wife] in that he punched, pushed and grabbed her about the head and body"; (2) the violation of the protective order and the threat to commit a crime allegedly occurred on December 10, 1991, when the defendant telephoned his girl friend and threatened to kill her.

[3]General Laws c. 209A, § 7 (1990 ed.), states in pertinent part: "Criminal remedies provided herein are not exclusive and do not preclude any other available civil or criminal remedies. The superior, probate and family, district and Boston municipal court departments may each enforce by civil contempt procedure a violation of its own court order."

The defendant did not object to the contempt hearing procedure as announced by the judge, and was provided approximately one and one-half hours to prepare for the hearing.

At the arraignment, when asked by the judge whether there was a question of bail, the assistant district attorney stated that the defendant had been released on $100 cash bail on one of the charges.

fendant's wife, his girl friend, and a man who lived with the defendant testified. The judge found the defendant in contempt.[4]

At the sentencing hearing the following day,[5] defense counsel asked, "Your honor, we are in agreement, then, that what took place yesterday was a civil contempt proceeding?" The judge responded, "Oh, I don't think I have much trouble with that. . . . What occurred yesterday was a contempt proceeding under the specific statutory grant of [G. L. 209A] that authorizes a court to consider whether or not a defendant under a restraining order is in contempt of that order." Defense counsel then restated his question, "And therefore it's a civil proceeding. Correct?" To which the judge responded, "I'm not going to characterize it. It may well be. It certainly didn't — it's not a criminal proceeding, but it's one that's being conducted specifically under a statutory grant."[6]

---

[4]The judge stated: "I don't have any doubt at all that on the date in question this defendant, in clear violation of the Court's order, went on those premises [his wife's residence]. And he didn't just violate the order by going on the premises or raising his voice, he took after her and beat on her. And that's exactly what this order was attempting to forestall, that he was not to be engaging in acts of violence towards this woman. And I consider that to be willful and deliberate and [contumacious] it's conduct in clear violation and in contempt of this Court's order. And if this Court is going to have any way of seeing that its orders get enforced, it's going to start considering actions like this before we get to questions about whether [there] on some criminal case that was an assault and battery or whether that conduct amounted to a violation of a protective order. . . . [T]his man is out of control.

"He's out of control with both people. And one of them may invite more of it than the other, but he has to be dealt with. . . .

"I have no assurances that this woman is going to be safe as long as he's on the street while these cases are pending. . . . I'm finding him in contempt and . . . I'm going to tell you what I'm going to do about it."

[5]The hearing was adjourned until the following day at the request of defense counsel.

[6]The judge then continued: "I view this to be an extremely urgent matter, of great exigency, that poses a clear and present danger to each of the women in this case. I've heard the evidence. I'm persuaded that — by clear and convincing evidence as a matter of fact, that this man . . . beat his wife, as the history has been in the past, that he punched her all over the place, that he banged her off two or three walls; that as a result, she came back seeking further relief in the face of an existing restraining or-

After further discussion with both defense counsel and the assistant district attorney, the judge concluded:

der. It's not good enough for me to say, 'Well, now we ought to have a complaint issue for contempt [pursuant to Mass. P. Civ. P. Rule 65.3, as defense counsel had requested]. We'll await an answer for twenty days and we'll go on.'

"See, there are other remedies that I even considered yesterday — while we're talking about what occurred — and that is, it was clear to me that this defendant, as you've indicated earlier, was before the Court for arraignment on the violation of a restraining order and he was before the Court on an assault and battery on his wife. And I could have considered, for example, the question of setting some kind of bail. But that would be a misuse of bail in my opinion, because that was not the purpose of the bail statute. We don't have preventative detention in this Commonwealth yet. And so I'm not going to start resorting to that under the bail statute. . . .

"My concern here is the safety and well being of two women, most especially this man's wife. He has the demonstrated capacity to cause serious physical injury on the one hand and he has the demonstrated capacity to make life-threatening assertions on the other. So I'm not going to wait for some 20-day proceeding and an opportunity to set this down for some kind of discovery and all of those things that might attend the normal civil contempt proceeding.

"I'm satisfied from what I heard yesterday, as I indicated earlier, by clear and convincing evidence, that this defendant beat this woman, his wife; that he made threats to the other woman under a separate restraining order; that that conduct is in flagrant and deliberate and clear violation of this Court's order; that if this Court is going to do anything to see to the proper enforcement of its orders, it should and it must, and it has the authority, as I read [G. L. c. 209A], to undertake an immediate . . . forthwith determination of whether or not a particular defendant is in contempt of an existing court order."

Defense counsel then read from G. L. c. 209A, § 7, stating, "The Superior, Probate, Family, District and Boston Municipal Court departments may enforce by civil contempt procedure a violation of its own court order." To which the judge responded, "So I don't disagree with you. If you want to characterize it as civil contempt, I don't disagree with that. . . . The problem with it, however, is, what is the appropriate procedure or remedy to be followed." Defense counsel later stated, "And for that reason, I was thinking of — it called — [G. L. c. 209A], a civil contempt proceeding." To which the judge again responded, "Right. And that's exactly what we had."

In response to defense counsel's comment that "additional confusion came by utilizing the district attorney's office to prosecute a civil contempt," the judge responded: "[T]here's been some reference made to the fact that the Commonwealth — the prosecutor participated in the proceeding, and I'm very mindful that that was exactly what occurred. And, in fact, that was at my instruction. Because I see a risk, that if we don't have

"And having heard the evidence and having made the findings that I have made, I do find this defendant in civil contempt. And in accordance with that, and as the only means I have of assuring the enforcement of this Court's orders, I'm committing him to the common jail for a period of thirty days. He may — he may post the sum of $5,000 cash . . . with the clerk of this court. And the condition of the posting of that cash will be, that he will have absolutely no contact whatsoever with either woman in this case, directly or indirectly, at the risk of the forfeiting of that $5,000 cash and a further review of whether there is a new contempt. In other words, he's being committed for thirty days. He can purge himself of that contempt by posting the $5,000 cash with the clerk's office on the conditions that I have sought to identify here this morning."

When defense counsel objected to the "amount of the bail of $5,000 cash," the judge responded:

"Oh, it's not bail. . . . I'm committing him in and finding him in civil contempt and I'm committing him for a term of thirty days to the common jail. I'm going to permit him to purge himself of that contempt by posting in the clerk's office $5,000 cash money . . . the strict condition of which is that he's to have no contact directly or indirectly with the women involved in this case. If he posts the $5,000 cash and he's prepared to

an adversary-type proceeding and the judge starts injecting himself into the case, that that's subject to criticism as well. And it was for that reason that I vested in the hands of two attorneys . . . of the presentation that occurred before this Court yesterday. And I'm also at pains to say that I know of nothing . . . that was or could have been adduced in this proceeding in behalf of this defendant that either was identified, or even this morning, is identifiable that would — that could not and was not reached directly yesterday . . . . And so I am, and I was, mindful yesterday that I'm not going to compel anybody to participate in a proceeding unless they understand it and they have a fair opportunity to defend themselves. And it seems to me that that's — that all of those standards were met yesterday."

come before the Court and make the representation that he understands the conditions and will abide by them, I will purge him of the contempt. Short of that, he stands committed."

The defendant was incarcerated from December 18, 1991, to January 16, 1992. On February 11, 1992, after electing a first instance jury trial, resulting in the transfer of the criminal complaints to the Lowell District Court jury session, the defendant moved to dismiss the complaints on the ground of double jeopardy. A judge in that court denied the motions.[7] Thereafter, a petition was filed with a single justice of this court under G. L. c. 211, § 3, seeking a stay of the defendant's trial and dismissal of the charges. One single justice granted a stay on April 27, 1992; another single justice reserved and reported the matter to the full court on October 27, 1992.

1. The double jeopardy clause of the Fifth Amendment to the United States Constitution protects against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense.[8] *North Carolina* v. *Pearce*, 395 U.S. 711, 717 (1969). *Commonwealth* v. *Woods*, 414 Mass. 343, 346 (1993). It is the third of these abuses that we are concerned with here. If the judge below was exercising his authority in a nonpunitive, noncriminal manner, there was no "punishment" in the constitutional sense that would involve the double jeopardy clause. *Hicks* v. *Feiock*, 485 U.S. 624, 640-641 (1988).

---

[7] The defendant's motion for reconsideration was denied in April, 1992.

[8] The double jeopardy clause of the Fifth Amendment to the United States Constitution provides: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb." It is applicable to the States through the Fourteenth Amendment to the United States Constitution. *Grady* v. *Corbin*, 495 U.S. 508, 510 n.1 (1990). Although not expressly included in the Massachusetts Declaration of Rights, it has long been recognized as part of our common and statutory law. *Commonwealth* v. *Woods*, 414 Mass. 343, 346 (1993). G. L. c. 263, § 7 (1990 ed.).

In order to determine whether the judge below imposed punishment, we focus on the sanction imposed on the defendant. *United States* v. *Halper*, 490 U.S. 435, 447 (1989). *Hicks* v. *Feiock, supra* at 636.

> " 'If it is for civil contempt the punishment is remedial, and for the benefit of the complainant. But if it is for criminal contempt the sentence is punitive, to vindicate the authority of the court.' *Gompers* v. *Buck's Stove & Range Co.*, 221 U.S. 418, 441 (1911). The character of the relief imposed is thus ascertainable by applying a few straightforward rules. If the relief provided is a sentence of imprisonment, it is remedial if 'the defendant stands committed unless and until he performs the affirmative act required by the court's order,' and is punitive if 'the sentence is limited to imprisonment for a definite period.' *Id.*, at 442. If the relief provided is a fine, it is remedial when it is paid to the complainant, and punitive when it is paid to the court, though a fine that would be payable to the court is also remedial when the defendant can avoid paying the fine simply by performing the affirmative act required by the court's order." *Hicks* v. *Feiock, supra* at 631-632.[9]

When we apply these rules to the instant case, it is clear that the sanction imposed on the defendant was civil in nature. The sanction was remedial and specifically designed to compel compliance with the protective orders that the defendant had previously disobeyed. In addition, the sentence imposed was not for a definite period. Rather, it was structured so that the defendant could purge himself of the sentence at any time if he posted the required cash amount and

---

[9]See *Local 28 of the Sheet Metal Workers' Int'l Assn'n* v. *EEOC*, 478 U.S. 421, 443 (1986) ("Criminal contempt sanctions are punitive in nature and are imposed to vindicate the authority of the court. *United States* v. *Mine Workers*, 330 U.S. 258, 302 [1947]. On the other hand, sanctions in civil contempt proceedings may be employed 'for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained.' *Id.*, at 303-304").

represented to the court that he would have no further contact with the women. Such a sanction is a proper civil contempt remedy. See *Shillitani* v. *United States*, 384 U.S. 364 (1966) (sentence must be viewed as civil in nature if court conditions release on contemnor's willingness to comply with order or imposes determinate sentence which includes purge clause); *Gompers* v. *Buck's Stove & Range Co., supra* at 442 (conditional nature of punishment renders relief civil since contemnor "can end the sentence and discharge himself at any moment by doing what he had previously refused to do").

Similarly, the cash-posting requirement was also conditioned on the defendant's compliance with the protective court order. It was also a proper civil contempt sanction. See *Hicks* v. *Feiock, supra* at 631-632. *Labor Relations Comm'n* v. *Fall River Educators' Ass'n*, 382 Mass. 465, 475 (1981) (conditional, coercive orders considered civil contempt). Contrary to the defendant's argument, the cash requirement was not a "fine"; it was merely designed to ensure that the defendant complied with the terms of the original restraining order. Even if it was intended that the sum revert to the Commonwealth if the defendant again violated the court order, that would not make the sanction criminal where the primary objective of such a prospective "fine" is to coerce compliance with a court order. *Labor Relations Comm'n* v. *Fall River Educators' Ass'n, supra* at 475-476.

The defendant's reliance on *United States* v. *Halper, supra*, is misplaced. The question the Supreme Court addressed in *Halper, supra* at 443, was "whether a civil sanction, in application, may be so divorced from any remedial goal that it constitutes 'punishment' for the purposes of double jeopardy analysis." The Court held that "under the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution." *Id.* at 448-449. The Court then emphasized:

"What we announce . . . is a rule for the rare case, the case such as the one before us, where a fixed-penalty provision subjects a prolific but small-gauge offender to a sanction overwhelmingly disproportionate to the damages he has caused. The rule is one of reason: Where a defendant previously has sustained a criminal penalty and the civil penalty sought in the subsequent proceeding bears no rational relation to the goal of compensating the Government for its loss, but rather appears to qualify as 'punishment' in the plain meaning of the word, then the defendant is entitled to an accounting of the Government's damages and costs to determine if the penalty sought in fact constitutes a second punishment. . . . [T]he only proscription established by our ruling is that the Government may not criminally prosecute a defendant, impose a criminal penalty upon him, and then bring a separate civil action based on the same conduct and receive a judgment that is not rationally related to the goal of making the Government whole." *Id.* at 449-451.[10]

As to the defendant's argument grounded on his claimed inability to post the required amount, it is settled that, in a civil proceeding, the defendant had the burden of proving his inability to comply with the court order. *United States* v. *Rylander*, 460 U.S. 752, 757 (1983). *Commonwealth* v. *One 1987 Ford Econoline Van*, 413 Mass. 407, 412 (1992). Here, the defendant's counsel objected to the "amount of the bail"

---

[10]Four cases cited by the defendant can be distinguished on their facts: *United States* v. *Dixon*, 598 A.2d 724 (D.C. 1991), cert. granted, 112 S. Ct. 1759 (1992) (defendant initially prosecuted for criminal contempt); *State* v. *Kipi*, 72 Haw. 164, cert. denied, 502 U.S. 866 (1991) (defendant initially prosecuted for criminal contempt); *State* v. *Vanselow*, 61 Ohio Misc. 2d 1 (1991) (sanction imposed constituted criminal punishment based on overly-broad reading of *United States* v. *Halper, supra*); *State* v. *Magazine*, 302 S.C. 55 (1990) (sanction of one year imprisonment suspended on payment of $1,500 fine and compliance with restraining order constituted criminal contempt since defendant had to serve sentence or pay fine).

set by the judge, but introduced no evidence on the defendant's inability to pay.

2. The defendant argues that, even if the proceeding was civil in nature, the judge should have followed the procedure outlined in Mass. R. Civ. P. 65.3, as appearing in 386 Mass. 1244 (1982) (proceedings for civil contempt). Rule 65.3 applies to the enforcement of restraining orders and injunctions generally. The procedures delineated are inconsistent with the clear intent of c. 209A, that there be speedy intervention by the courts in domestic disputes to protect the health and safety of the domestic partners. Moreover, the rule does not apply to the District Court Department. See Mass. R. Civ. P. 1, 365 Mass. 730 (1974). Although the District Court rules incorporate many of the Massachusetts Rules of Civil Procedure including rules 65 and 65.1, rule 65.3 was not adopted. See Mass. R. Civ. P. 65, 365 Mass. 832 (1974); Mass. R. Civ. P. 65.1, 365 Mass. 834 (1974); Mass. R. Civ. P. 65.2, as amended, 376 Mass. 948 (1979); Mass. R. Civ. P. 65.3; Dist./Mun. Cts. R. Civ. P. 65-66 (1992). In such a situation the District Court rules authorize the court to "proceed in any lawful manner." Dist./Mun. Cts. R. Civ. P. 81 (1992). Since the defendant was given notice, was represented by counsel, and was afforded an opportunity to be heard, the procedure followed by the judge was lawful. This is especially so considering, as noted above and as specifically commented on by the judge, the requirements for speedy intervention in G. L. c. 209A.

We hold that, since the contempt sanction was civil in nature, proceeding with criminal charges against the defendant will not offend the double jeopardy clause. A judgment is to

enter denying the defendant relief under G. L. c. 211, § 3.[11]

*So ordered.*

---

[11]We note that in the bill of particulars that alleges a violation of a restraining order, the Commonwealth incorrectly states that "the defendant failed to comply with the provisions of Restraining Order # 9148-56, which indicates that the defendant have 'no contact directly or indirectly with the plaintiff, including telephone communication,' by telephoning [his girl friend] and making threatening comments to her." The provision that orders the defendant to have "no contact . . . with the plaintiff, including telephone communication" was added to the restraining order on December 11, 1991, after the defendant was alleged to have made the threatening telephone call.

The bill should have alleged that the defendant violated the order by "abusing" the woman, since the definition of "abuse" includes "placing another in fear of imminent serious physical harm." G. L. c. 209A, § 1 (1990 ed.).