46 Mass. App. Ct. 431 (1999)                                    431

Labor Relations Commission *v.* Salem Teachers Union, Local 1258, MFT, AFT, AFL-CIO.

LABOR RELATIONS COMMISSION & another *vs.* SALEM
TEACHERS UNION, LOCAL 1258, MFT, AFT, AFL-CIO; SALEM
SCHOOL COMMITTEE, intervener.

No. 95-P-0637.

Essex. January 28, 1999. - March 10, 1999.

Present: PORADA, GILLERMAN, & DREBEN, JJ.[1]

*School and School Committee,* Contempt, Strike by teachers. *Labor,* Strike by
public employees, Contempt. *Contempt. Damages,* Contempt.

A judge of the Superior Court correctly ruled that a teachers' union was in
civil contempt for failure to comply with a clear and unequivocal temporary
restraining order, ordering the union to cease and desist from encouraging
or condoning a strike of public school teachers [435-436]; however, where
the judge did not apply the appropriate standards in determining the amount
of the fine imposed, the matter was remanded for further proceedings
[436-437].

CIVIL ACTION commenced in the Superior Court Department on
November 2, 1994.

The case was heard by *Elizabeth B. Donovan,* J., and a mo-
tion for reconsideration was heard by her.

*Jeffrey W. Jacobsen* for the defendant.

*John B. Cochran* for the plaintiff.

*Victoria B. Caldwell* for the intervener.

GILLERMAN, J. A Superior Court judge found the Salem Teach-
ers Union (union) in civil contempt for failure to comply with a
temporary restraining order issued by the judge on November 2,
1994, ordering the union to cease and desist from encouraging
or condoning any strike of teachers and paraprofessionals at the
Salem public schools. On appeal, the union argues that the
judge erred in treating the alleged contempt as a nonjury civil

[1]The case was first heard by Justices Dreben, Gillerman, and Flannery.
After the death of Justice Flannery, Justices Porada, Dreben, and Gillerman
reheard the case.

proceeding, rather than a criminal one, that the prospective daily fine imposed by the judge for noncompliance was arbitrary and oppressive, and that the Salem school committee (school committee) should not have been allowed to intervene in the contempt proceedings.

*The factual background.* In the fall of 1994, the union and the school committee were unable to agree on a new contract, and on Monday, October 31, the teachers went on strike. The school committee immediately petitioned the Labor Relations Commission (commission) for a strike investigation, pursuant to G. L. c. 150E, § 9A,[2] and on November 1 the commission issued a back to work order. Alleging noncompliance with its order, the commission instituted this action in the Superior Court under § 9A(*b*) on November 2. The temporary restraining order sought and obtained by the commission was served on the union on November 2, but there was no compliance. The commission brought a complaint for contempt on November 3, and a hearing on the alleged noncompliance was held on Monday, November 7.

At the November 7 hearing, the judge, without objection by the union, allowed the motion of the school committee to intervene. Counsel for the union then presented a motion for a jury trial on the contempt complaint, citing *International Union, United Mine Wkrs.* v. *Bagwell*, 512 U.S. 821 (1994). The judge denied the motion, and the parties proceeded to an evidentiary hearing.

After the parties rested, the commission requested that a prospective, coercive fine be imposed on the union in the amount of $15,000 per day, escalating at the rate of $5,000 per day for each day that the strike continued. In support of that request, the commission relied on financial reports the union had previously filed with the commission, copies of which had been filed with the court. Those reports, according to counsel to

---

[2]Section 9A(*a*) provides that no public employee or employee organization shall engage in a strike or induce, encourage or condone a strike. Subparagraph (*b*) authorizes the labor relations commission to investigate any petition filed by an employer alleging that a strike is occurring, or is about to occur. Thereafter, if, after investigation, the commission finds that subparagraph (*a*) has been violated or is about to be violated, the commission may institute appropriate proceedings in the Superior Court.

the commission, showed the union's cash on hand on August 31, 1993, at $60,000 and dues at $145,215.[3]

At the conclusion of arguments by counsel, the judge found that her November 2 order had been violated on November 3, 4, and 7. The judge continued the temporary restraining order, and she ordered the union to pay a prospective fine of twenty thousand dollars, commencing on November 8, for each additional day of noncompliance.

On November 8, the union presented a motion to reconsider the contempt fines. The judge said that she would hear counsel on the motion. Counsel to the union discussed the affidavit of Ralph Turgeon, treasurer of the union, which was attached to the union's motion. The affidavit asserted that funds currently on hand as of November 7, 1994, were $36,148.77, that dues collected for fiscal 1993 were $132,887, see note 3, *supra*, that the union was required to pay, during fiscal 1993, $56,993.60 to the Massachusetts Federation of Teachers, $38,156.62 to the American Federation of Teachers, and $2,299.35 to the Massachusetts AFL-CIO. These payments, according to the affidavit, were required by the union's affiliation agreements with the foregoing organizations. The affidavit concluded that the union's disposable income in 1993 was $40,000 (before operating expenses of the local), and approximately the same amount was anticipated for the fiscal year 1994.

The judge observed that it seemed "the majority of the monies is funneled upward, out of the local organization . . . . [I]f I were to decide that the local doesn't have sufficient monies, I would then be compelled maybe to bring in the State and national to see what assets they have to satisfy and fines that may be incurred by the teachers." Counsel to the union responded that "that would be holding organizations that are in no way parties to this lawsuit." The judge replied, "Well, bring them in as parties. See, if the money has gone up the ladder and, it's like a funnel, except the bottom of the funnel is at the local stage so that there isn't sufficient monies to pay for a fine and say it's confiscatory not coercive, then it seems to me what we should be looking beyond just the local." Counsel to the union argued the illegality of the judge's suggestion. Counsel to the commission argued that the only relevant number was the

---

[3]The report relied upon indicates that the $145,215 figure includes amounts collected over twenty "deduction periods." The union's report for the fiscal year ending August 31, 1993, showed dues received at $132,887.

gross amount of dues collected. The judge took the motion "under advisement" and proceeded with the commission's application for a preliminary injunction. At the conclusion of arguments, the judge said that she would have a ruling on the union's motion for reconsideration by the end of the day.

Later the same day the judge issued "Findings of Fact and Order on Plaintiff's Complaint for Contempt and the Imposition of a Coercive Fine." The judge found the union in contempt of her order of November 2, 1994, and imposed a prospective fine of $20,000 per day beginning November 8, 1994. On November 8, 1994, the temporary restraining order was converted to a preliminary injunction. On November 9, the docket shows that the motion for reconsideration of the contempt fines was denied. The record is clear, however, that the judge heard and considered the motion for reconsideration and, after reconsideration, denied the request to reduce the daily fine of $20,000.

It is undisputed that the strike continued during that week, that agreement on a new contract was reached on Sunday, November 13, that the agreement was ratified on November 14, and that school resumed on Tuesday, November 15.

A final hearing was held on December 15, 1994, regarding the entry of a final judgment. At the hearing, the union acknowledged its agreement to pay the reasonable and necessary costs of the city of Salem as a result of the labor dispute during the period October 31 to November 14, 1994. However, the union renewed its motion for reconsideration and again asked that the daily fine be reduced, since the $20,000 daily rate was one-half of the union's annual net income after distributions to its affiliated organizations (described above). Further, the union argued that, if the union were obliged to pay the $60,000 in fines in addition to the amounts likely to be due the city,[4] the total would far exceed any sum the union would be able to pay.

At the conclusion of the hearing, the judge announced her decision to adhere to the daily fine of $20,000. However, the fine would be limited to three days.[5] The judge explained: this amounted to about $35 per union member per day, each of whom "had an opportunity to make a decision whether they

---

[4]The city had submitted a claim of $128,586.12.

[5]Friday, November 11, was a public holiday, and the judge chose not to hold the defendant in contempt for noncompliance on November 14, the day on which the union memberships voted to ratify the new contract. Also, no

were going to violate a court order, a court order based upon a law which says that no public employee shall strike . . . . [T]hey made a decision to violate that order. . . [I]n this case I'm going to impose the twenty thousand dollars per day for three days." The judge agreed, however, that the fine would be "credit[ed] . . . towards the damages [due the city]."

On December 22, a judgment entered ordering the union to pay a fine of $60,000 for its violations on November 8, 9, and 10. The fine was payable to the clerk of the Superior Court. This appeal followed.

*Discussion.* To begin, we note that certain questions that often attend proceedings involving alleged indirect contempt are absent here. That is to say, there was a clear and unequivocal order that was binding on the union, and the court's command was clearly disobeyed. So much is undisputed. See *Allen* v. *School Comm. of Boston,* 400 Mass. 193, 194 (1987). Further, it is settled law that "[c]riminal contempt sanctions are punitive in nature and are imposed to vindicate the authority of the court. On the other hand, sanctions in civil contempt proceedings may be employed 'for either or both of two purposes: to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained.' " *Mahoney* v. *Commonwealth,* 415 Mass. 278, 284 n.9 (1993) (citation omitted), quoting from *Local 28 of the Sheet Metal Workers' Intl. Assn.* v. *EEOC,* 478 U.S. 421, 443 (1986). In this case the $20,000 daily fine was manifestly imposed to coerce the defendant into compliance with the order of the court dated November 2, 1994.

The union's principal argument is that the Supreme Court's decision in *Bagwell, supra,* requires that, given the alleged harsh punishment, this case should have been treated as one for criminal contempt with the attendant jury trial. *Bagwell* points out that "[u]nderlying the somewhat elusive distinction between civil and criminal contempt fines . . . is what procedural protections are due before any particular contempt penalty may be imposed. Because civil contempt sanctions are viewed as nonpunitive and avoidable, fewer procedural protections for such sanctions have been required. To the extent that such contempts take on a punitive character, however, and are not justified by other considerations central to the contempt power, criminal

penalty was imposed for noncompliance, on November 3, 4, and 7, with the temporary restraining order of November 2.

procedural protections may be in order." *Bagwell*, 512 U.S. at 830-831.

The Court concluded that the contempt fines in that case required criminal procedural protections. However, the fines in *Bagwell* ($20,000 for each nonviolent breach of the court's order and $100,000 for each violent breach of the court's order) were seen by the Court as "closely analogous to fixed, determinate, retrospective criminal fines which petitioners had no opportunity to purge once imposed." *Id.* at 837. Additional critical factors, according to the Court, were these: (i) the union's contumacy did not involve "simple, affirmative acts"; rather, there were "widespread, ongoing, out-of-court violations of a complex injunction"; (ii) the conduct of the union was subject to an "entire code of conduct" imposed upon it by the court; (iii) the union's contumacy lasted many months and spanned a substantial portion of the State; (iv) the fines were "serious," totaling over $52,000,000. *Ibid.* From these facts, the Court concluded that "disinterested factfinding and evenhanded adjudication were essential, and petitioners were entitled to a criminal jury trial."[6] *Id.* at 837-838.

Here, on the other hand, there was a simple order to desist encouraging or condoning the strike, and an acknowledged violation. The order was neither punitive nor in vindication of the court's authority. See *Labor Relations Commn.* v. *Fall River Educators' Assn.*, 382 Mass. 465, 475-476 (1981). The contumacy was only three days, and the fine imposed, while substantial to the union, could not be regarded as "serious." "[D]isinterested factfinding and evenhanded adjudication," *Bagwell*, *supra*, by a criminal jury trial was not required in the circumstances of this case. *Bagwell* does not control the facts of this case. The judge's ruling of a civil contempt was correct.

It does not follow, however, that the judge applied the appropriate standards in determining the amount of the fine. See *Fall River*, 382 Mass. at 482 (in determining the amount of a prospective fine, the judge should consider "the character and magnitude of the threatened harm, the probable effectiveness of any suggested sanction, the defendant's financial resources, and the seriousness of the burden on that defendant").

---

[6]In note 5 to its opinion the Court added, "We need not answer today the difficult question where the line between petty and serious contempt fines should be drawn, since a $52 million fine unquestionably is a serious contempt sanction." 512 U.S. at 838 n.5.

The four factors identified in *Fall River* appear not to have been considered by the judge. Most troublesome is the attention paid by the judge to the union's contributions to the American and Massachusetts Federations of Teachers as well as to the Massachusetts AFL-CIO. According to the Turgeon affidavit presented to the judge, these contributions were "required . . . [by] our affiliation agreements . . . ." Contributions to affiliated organizations were recognized as allowable distributions in *Fall River*, 382 Mass. at 479-480. Thus the judge did not consider relevant factors in calculating the amount of the union's contempt fine, and the case must be remanded to the Superior Court for further proceedings.

As to the argument that the school committee should not have been allowed to intervene, it is settled law that a judge "enjoys a full range of reasonable discretion in evaluating whether the requirements for intervention have been satisfied," and his determination will not be reversed absent an abuse of that discretion. *Peabody Fedn. of Teachers, Local 1289* v. *School Comm. of Peabody*, 28 Mass. App. Ct. 410, 413 (1990). Here, the school committee had a direct interest in the outcome of these proceedings, and its intervention was supported by the commission. We find no abuse of discretion.

The judgment, with its contempt fine of $60,000, is vacated, and the case is remanded to the Superior Court for further proceedings. Upon remand, the judge will also be required to consider the apparent inconsistency between the final judgment ordering the payment of the fine to the clerk of the Superior Court and the judge's agreement with counsel to the union that the fine would be "credit[ed] towards the damages."

*So ordered.*