McDonald, J.
The plaintiffs, Lester Sadowsky (“Sadowsky”) and Abraham Haddad (“Haddad”), brought and prevailed in this action against the defendants, Henry Lee Bishop (“Bishop”), individually and as executor of the Estate of Sally Bishop, and the Estate of Sally Bishop, alleging, inter alia, breach of contract and violations of G.L.c. 93A, the Consumer Protection Act, and G.L.c. 109A, the Fraudulent Transfer Act. The plaintiffs have moved for sanctions, arguing that Bishop disobeyed two orders issued by this court by failing to pay a certain amount to escrow, failing to pay legal expenses, and failing to pay interest on these amounts. For the reasons set forth below, this court DENIES the plaintiffs’ motion for sanctions, and clarifies its previous order pursuant to Mass.R.Civ.P. 60(a).

BACKGROUND

On May 22, 1997, the parties, prior to trial, entered into a Stipulation for Preliminary Injunction, later incorporated into an order (“Preliminary Injunction”) by the court (Burnes, J.), which ordered Bishop to place in escrow any monies received from the sale or transfer of his stock in Worcester Ob-Gyn Associates, Inc. (“WOA”) or from the sale of the assets of WOA.
On July 10, 1998, the plaintiffs filed a complaint for contempt alleging that Bishop had received monies from the sale of his stock in WOA, yet had failed to place these monies into an escrow account as required by the Preliminary Injunction. On October 28, 1999, this court found that Bishop had received $38,350 from the sale of his stock in WOA, and had failed to deposit this amount into an escrow account. This court ruled that Bishop was in contempt of the Superior Court. This court then ordered that Bishop “(1) . . . pay the sum of $38,350 plus statutory interest thereon from Jan. 15, 1997 to date, into an escrow account in accordance with the Preliminary Injunction; and (2) . . . pay the reasonable legal expenses of the plaintiffs Sadowsky and Haddad in connection with bringing this contempt action.” On February 28, 2000, this court further ordered Bishop to pay the plaintiffs the sum of $4,056.25 in legal expenses.
On March 29, 2000, Bishop paid $36,813.38 into the designated escrow account. On April 20, 2000, the plaintiffs moved for sanctions including, but not limited to, incarceration, based on Bishop’s alleged failure to pay the balance of the escrow amount, legal expenses, and accrued interest. An evidentiary hearing was held. It was represented at the hearing, without contest, that the balance of the escrow payment had, by then, been made and that all but $56.25 of the legal expenses had, by then, been paid. Thus, the remaining issue of contempt concerned the unpaid accrued, and accruing, interest.

DISCUSSION

In a civil contempt proceeding, sanctions are appropriate to “coerce the defendant into compliance with the court’s order, and to compensate the complainant for losses sustained.” Labor Relations Comm’n v. Salem Teachers Union, 46 Mass.App.Ct. 431, 435 *231 (1999). A court may incarcerate a contumacious defendant in a civil contempt proceeding where such sanction is remedial and designed to coerce compliance with the court’s previous orders. Cf. Barreda v. Barreda, 16 Mass.App.Ct. 918, 920-21 (1983).
The plaintiffs have moved for “sanctions” on Bishop “including, but not limited to, incarceration.” While such sanctions clearly are within the court’s authority, the Massachusetts Rules of Civil Procedure do not allow a party to make such a motion in the context of civil contempt. The plaintiffs, furthermore, have not sought a contempt judgment pursuant to Rule 65.3(c).
This court declines to impose sanctions upon Bishop at this time, but rather finds that Bishop continues to stand in contempt of the October 28, 1999 order. To hold a party in contempt, the court must find “a clear and undoubted disobedience of a clear and unequivocal command.” Judge Rotenberg Educ. Ctr., Inc. v. Comm’r of the Dep’t of Mental Retardation (No. 1), 424 Mass. 430, 443 (1997), citing Warren Gardens Hous. Coop. v. Clark, 420 Mass. 699, 700 (1995), quoting United Factory Outlet, Inc. v. Jay’s Stores, Inc., 361 Mass. 35, 36 (1972). Where the order is ambiguous or the disobedience is doubtful, there cannot be a finding of contempt. United States Time Corp. v. G.E.M. of Boston, Inc., 345 Mass. 279, 282-83 (1963). The burden of proof in a contempt action is on the complainant to prove its case by a preponderance of the evidence. Town of Manchester v. Department of Envtl. Quality Eng’g, 381 Mass. 208, 212 (1980). The issue here, therefore, is whether this court’s orders provided clear and unequivocal commands to Bishop, and further, whether he clearly and undoubtedly disobeyed those commands.
Here, the contempt judgment commanded Bishop to “pay the sum of $38,350 plus statutory interest thereon from January 15, 1997, to date, into an escrow account" and further, to “pay the reasonable legal expenses incurred with bringing th[e] contempt action.” The subsequent order regarding legal expenses commanded Bishop to pay the plaintiff $4,056.25. The plain language of the judgment and the order clearly and unequivocally commanded Bishop to pay the $38,350, plus the statutory interest, and $4,056.25, determined to be the reasonable legal expenses associated with the complaint for contempt.
I find that Bishop willfully disobeyed this court’s orders by failing to pay these amounts in a reasonable time after the orders were issued. I reject Bishop’s contentions that he made a good faith effort to pay the balance, and that his low income has hindered his ability to pay timely.
Bishop’s five-month delay in paying any part of the judgment, without justification or explanation, undermines his argument that he was acting in good faith to pay the unpaid balance. Although the court’s order did not specify a date by which Bishop had to render payment, it is well-established that absent a specific term, the time for performance does not extend forever, but only for a reasonable time. Boyer v. Bowles, 316 Mass. 90, 94 (1944) (where order failed to set time for payment, it was implicit that payment was to be made forthwith). It was implicit that the court's order obligated Bishop to submit the balance owed within a reasonable period of time. Furthermore, considering his income, real and potential, Bishop’s proposal to pay two hundred dollars per month towards satisfaction of the judgment was unreasonable and was not made in good faith.
I reject Bishop’s defense of inability to pay due to his income and expenses. A court may excuse noncompliance with a court order where a party’s compliance becomes impossible; the burden of proving impossibility lies with the alleged contemnor. Commonwealth v. One 1987 Ford Econoline Van, 413 Mass. 407, 412 (1992); Allen v. School Comm. of Boston, 400 Mass. 193, 194-95 (1987). A defense of impossibility fails, however, where the alleged contemnor is responsible for his inability to comply. Allen, supra at 195.
The evidence before the court demonstrates that Bishop’s income is substantially determined by his own efforts, and as such, he alone is responsible for any inability to pay due to purported salary constraints. See Allen, supra at 195. His 1998 federal income tax returns demonstrate that he was capable of earning $134,234 per year in his practice as a physician. Bishop may not use his decision to work only two days per week, at an annual salary of less than one-third of his 1998 earnings, to escape his responsibility to obey this court’s orders.
Bishop’s lack of good faith in endeavoring to fulfill his obligation to the court is underscored by his testimony that he paid $15,000 per year to his wife for his share of household expenses, an amount determined arbitrarily by him. This reduction of the marital relationship to a cost-sharing arrangement is not only unromantic, it is an offense to the court. The amount paid to his wife, wholly within his control, does not truly impair Bishop’s ability to comply with the order.
Bishop’s failure to pay the escrow amount owed, in its entirety, plus the accrued interest, and his failure to pay the legal expenses, plus the accrued interest, therefore, constitutes clear and unequivocal disobedience of the judgment and orders issued by this court. Accordingly, I find that Bishop remains in contempt.
There remains the determination of the amount or the method of calculation of the amount owed by Bishop, payment of which is required to abate his contempt. The plaintiffs argued that Bishop owes $22,768.87 to the escrow account,[3] plus $4,056.25 in legal expenses. The plaintiffs, however, did not challenge Bishop’s assertion at the hearing that $4,000 of the legal expenses had been paid by the time of that event. Bishop counters that he owes only $16,301.37 to escrow, plus $56.25 in legal expenses. This latter amount I take to be agreed.[4]
*232 The first issue is determining from what date shall this court calculate the interest. Where a party has wrongfully withheld funds, the court calculates the interest rate from the date the party withheld the funds. Cf. Ratner v. Hill, 270 Mass. 249, 253 (1930) (party must pay interest from date principal sum is due); Caron v. Wadas, 1 Mass.App.Ct. 651, 656 (1974) (decedent’s son who withdrew funds from bank account which were determined to be property of decedent’s estate was liable for interest from date of withdrawal to date of surrender). Bishop’s testimony that he did not receive the funds until March 1998 is inconsistent with this court’s earlier finding that he received the $38,350 from Aspectus, Inc. (“Aspectus”) for the sale of his stock in WOA on January 15, 1998,[5] and deposited the funds into his own personal account rather than the escrow account as required by Judge Burnes’ order. Bishop has offered no basis to revisit that finding.
Accordingly, the pre-judgment interest should be calculated from January 15, 1998, the date upon which the funds were wrongfully withheld, to the date of entry of the judgment of contempt, October 28, 1999, at 12 percent per annum. See G.L.c. 231, §§6B and 6C. In rendering this decision, I clarify my October 28, 1999 order, pursuant to Mass.R.Civ.P. 60(a), which provides that a court may, sua sponte, correct a clerical error in its judgment. The date from which pre-judgment interest should be calculated is changed from January 15, 1997 to January 15, 1998, the date on which Bishop received the check from WOA constituting the proceeds of the sale of his stock.
The post-judgment interest shall be calculated upon the sum of the principal owed, $38,350, plus the pre-judgment interest of $8,245.25, at 12 percent per annum from the date of the entry of the judgment until the date of the satisfaction of the judgment. See City Coal Co. of Springfield, Inc. v. Noonan, 424 Mass. 693, 695-96 (1997) (post-judgment interest is calculated on the entire amount of the judgment, including the pre-judgment interest).
Finally, with regard to the legal expenses, the plaintiffs submitted a memorandum on the calculation of expenses at the July 6, 2000 contempt hearing, alleging that Bishop still owed $4,056.25, with interest to be calculated from Februaiy 28, 2000, the date upon which this court entered its order granting the plaintiffs’ request for legal expenses. Bishop testified at that hearing, without challenge, that he had paid all but $56.25 of the legal expenses.
Accordingly, Bishop must pay any unpaid legal expenses, with interest calculated from the date of the entry of this court’s order requiring payment of such fees. See Patry v. Liberty Mobilehome Sales, Inc., 394 Mass. 270, 272-73 (1985) (where legal expenses are a part of plaintiffs damages, as in civil contempt actions, interest shall be awarded), citing Coyne Indus. Laundry of Schenectady, Inc. v. Gould, 359 Mass. 269, 279 (1971).

ORDER

For the foregoing reasons, it is hereby ORDERED that the Plaintiffs’ Motion for Sanctions be DENIED. It is further ORDERED that the clerk shall calculate the pre-judgment interest, pursuant to the judgment of contempt, from January 15, 1998 to October 28, 1999. It is also ORDERED that, within thirty days from the date of this order, Bishop shall (1) pay the sum of $4,245.25, the unpaid balance owed to the escrow account including pre-judgment interest, to the previously established escrow account; (2) pay post-judgment interest of $5,591.43 per annum, calculated from October 28, 1999 until the date of the-satisfaction of the judgment of contempt; and (3) pay directly to the plaintiffs’ attorneys the sum of $56.25 in legal expenses, the unpaid balance, plus 12 percent interest on any unpaid amounts calculated from February 28, 2000.

 The plaintiffs contend that the court should take the $38,350, add 12 percent interest from January 15, 1997, the date stated in the October 28, 1999 judgment, to March 29, 2000, then subtract the $36,813.38 paid by Bishop on that date, with interest at 12 percent calculated through the date of the hearing on their motion for sanctions on July 6, 2000.

 Bishop asserts that the court should take the $38,350, add 12 percent interest calculated from March 1998, the date which he alleges he received the sum, then subtract the $36,813.38 paid on March 29, 2000. He also alleges that he made payments to the escrow account after March 29, 2000 totaling $5,536.62.

 Neither the plaintiffs nor Bishop addressed the court’s apparent error in calculating the interest from January 15, 1997, rather than January 15, 1998.